STATE v. McDONALD.

(Filed November 3, 1903.)

EMBEZZLEMENT—*Intent—Burden of Broof—Presumptions—Felonious Intent—The Code, sec. 1014—Reasonable Doubt.*

In an indictment for embezzlement, the conversion being admitted or shown, the burden is on the state to show beyond a reasonable doubt the intent to defraud.

INDICTMENT against C. C. McDonald, heard by Judge *R. B. Peebles* and a jury, at July Term, 1903, of the Superior Court of WAKE County. From a judgment of guilty on a special verdict the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Womack & Hayes* and *Douglas & Simms,* for the defendant.

WALKER, J. The defendant was indicted in the Court below for the crime of embezzlement and having been convicted appealed to this Court. It is alleged in the indictment that

he was the agent of the Supreme Lodge of Knights of Honor,' and that he did fraudulently, corruptly and feloniously embezzle and convert to his own use five hundred dollars, which had been received by him as agent and entrusted to his care for the said Lodge.

By consent of the State and the defendant certain facts were agreed upon for the purpose of being embodied in a special verdict. They were to the effect that defendant had been irregularly appointed Financial Reporter for Oak City Lodge in 1895, and assumed the duties of said office and acted as Reporter until June, 1901. Defendant collected all assessments from the members of the said Lodge and remitted them to the Grand Lodge until May, 1900. In April, 1900, he collected the assessments and deposited them to his individual credit in a bank in Raleigh and drew the money out for his personal use, the amount so drawn out being about twelve hundred dollars. He paid nothing to the Supreme Lodge after April, 1900. In July 1901, with money borrowed from another bank in the said city, he paid back to the members of Oak City Lodge the amount of the assessments collected by him. When asked why he did not send the assessments to the Supreme Lodge, the defendant replied that "he did not remit them because he got in a position that he could not do so." There were other facts agreed upon and stated in the special verdict, but it is not necessary to set them out, as in the view we take of the case those already stated are sufficient to present the point upon which our decision must turn.

There was one disputed question submitted to the jury with the understanding that the finding thereon should be incorporated with the other facts, and that the facts so agreed upon and the said finding of the jury upon the issue submitted to them should constitute the special verdict. That disputed question was: Whether the defendant appropriated the

amount of the assessments collected by him with the intent to defraud the Supreme Lodge. The jury found that he did, and the Court being of opinion that upon the special verdict as thus rendered by the jury the defendant was guilty, the verdict was so entered and judgment rendered thereon, from which the appeal was taken.

Upon the question of intent the defendant requested the Court to give the following instructions: 1. That the felonious intent is an essential element of embezzlement and must be shown by the State beyond a reasonable doubt, and unless the State has so shown the jury will find the defendant not guilty. 2. That the intent with which the offense was committed is for the jury and not for the Court.

These instructions were refused, and the Court charged the jury "That there was an appropriation of the money by the defendant to his own use, and that the law raised the presumption, as a matter of fact, that it was done with a fraudulent intent and put the burden upon the defendant to rebut that presumption; that the defendant might have gone upon the witness stand and said he had no such intent, and then it would have been for the jury to say whether they believed the statement or not; but that the defendant had introduced no evidence and hence he had failed to rebut the presumption before mentioned, and if the jury believe the evidence they should answer yes to the issue."

We think the Court erred in not giving the instructions asked by defendant, and also in charging the jury that the defendant had introduced no evidence and hence he had failed to rebut the presumption of a fraudulent intent raised by the law from the act of conversion of the funds, and that if the jury believed the evidence they should answer the first issue "Yes." It is admitted in the record that at the time the defendant agreed to the other facts in the special verdict his counsel stated that he did not waive the full benefit of the

prayers for instructions above mentioned, and that he would insist on all of his legal right as to the special issue submitted, and the rights of the defendant were accordingly reserved.

The crime of embezzlement is the fraudulent conversion of property by one who has lawfully acquired possession of it for the use and benefit of the owner. Embezzlement was not a common law offense. *State v. Hill*, 91 N. C., 561. It was first made a criminal offense in England by statute, 21 Henry VIII, ch. 7, to punish the appropriation by servants of the property of their masters in violation of the trust and confidence reposed in them. 1 McLain Cr. Law, sec. 621. It was enacted in consequence of a decision that a banker's clerk, who received money from a customer and appropriated it to his own use could not be convicted of larceny on the ground that the money had never been in the employer's possession. Clark's Cr. Law, p. 308. It was made a crime in this State by The Code, sec. 1014. The general object of these statutes was to punish the misappropriation of property rightfully in the possession of the alleged wrong-doer, who, though civilly liable for a conversion, could not be convicted of larceny, because there was no taking from the owner's possession by an act of trespass. The only difference, therefore, between larceny and embezzlement is that in the former there must be a trespass, while in the latter that is not necessary. Embezzlement is to all intents and purposes larceny without the ingredient of a trespass. In both offences the act of taking or converting must be done with a fraudulent or felonious intent. In embezzlement there must have been not only a relation of trust and confidence between the owner and the person who is charged with the conversion, but the property must have been appropriated with a fraudulent purpose. Clark's Criminal Law, secs. 99 and 100. We think, therefore, that the conversion of funds by a person who has been entrusted with

them becomes criminal as an embezzlement only by reason of this corrupt intent, and it is as necessary for the State to establish the intent as a fact independent of the conversion as it is to prove the bad intent in a prosecution for larceny as a fact apart from the taking. The intent to defraud is no more implied in a case of embezzlement than the felonious intent is from the act of taking in a case of larceny. There is a perfect analogy between the two offences in all respects, except that in one of them a trespass, either actual or constructive, must have been committed, which is not required in the other, its place being supplied by the relation of trust and confidence between the parties; and as this difference has nothing to do with the question of intent, there is no good reason why proof of the intent in the one case should not be governed by the same principles as in the other, for where there is the same reason there is necessarily the same law. It follows, therefore, from what we have said that if the mere act of takink will not raise the presumption of a felonious intent in a prosecution for larceny, there can be no valid reason why the act of conversion should do so in the trial of an indictment for embezzlement. 3 Rice on Ev., sec. 458; 1 McLain Cr. Law, sec. 623; Underhill on Crim. Ev., sec. 282; *State v. McLean,* 121 N. C., 595, 42 L. R. A., 721.

The rule of law, with some exceptions, which do not apply to our case is this: That when an act is forbidden by law to be done, the intent to do the act is the criminal intent and the law presumes the intent from the commission of the act; but when an act becomes criminal only by reason of the intent, unless the intent is proved the offense is not proved, and this intent must be found by the jury as a fact from the evidence. It is for them to infer it, and not for the Court. *State v. King,* 86 N. C., 603; *State v. Wolf,* 122 N. C., 1079; *State v. Barrett,* 123 N. C., 753; *State v. Kittelle,* 110 N. C., 560, 28 Am. St. Rep., 698, 15 L. R. A., 694; *State v. McLean,*

*supra*. The jury can be instructed to find the particular intent only when the act itself is unlawful and voluntary, because, if it is so, the law itself infers the *quo animo* from the act. *State v. Presnell*, 34 N. C., 103. In that case the criminal intent is inseparably connected with the act which is forbidden by law. *State v. Voight*, 90 N. C., 741. No so when the intent is an essential element of the crime. In *State v. Wolf*. *supra,* which was an indictment for forgery, an offense involving a fraudulent intent, this Court held that there was error in the charge to the jury because the intent was not left to them to pass upon, although the facts in evidence tended most strongly and conclusively to show the corrupt motive. In *State v. Foust,* 114 N. C., 842, it was said by the Court, through the present *Chief Justice,* that the offense of embezzlement is a breach of trust by misapplying or converting property entrusted to the defendant, when done with a fraudulent intent. This shows clearly that the mere act of converting the property to the defendant's own use is not sufficient to constitute the offense, and that it is incumbent upon the State to go a step farther and prove that it was done with a fraudulent purpose.

Mr. Bishop in discussing the question says, substantially: "The doctrines stated on the general subject of the intent govern the offense of embezzlement, the felonious or otherwise fraudulent intent being an essential element of the crime." 2 Bishop Cr. Law, (8 Ed.). sec. 379. He thus sums up the doctrines to which he had just referred: There can be no crime without an evil mind. No people in any age would allow that a man should be deemed guilty unless his mind was so. It is therefore a principle of our legal system, as probably it is of every other, that the essence of an offense is this wrongful intent, without which it cannot exist, and it is the doctrine of the law, superior to all other doctrines, because first in nature, from which the law itself proceeds,

that no man is to be punished as a criminal unless his intent is wrong. 1 Bish. Cr. Law, secs. 287-290. In the case of *State v. Reilly,* 4 Mo. App., 398, instructions having been asked by the defendant, which were similar to those requested in this case, and having been refused, and the Court having charged the jury, as did the Judge below in our case, that the act of conversion must have been accompanied with a felonious intent, which was defined by the Court below to be merely a wronguful conversion, the reviewing Court in passing upon the charge said: "The defendant's instruction ought to have been given. It was his right to have the question of intent squarely placed before the jury. Upon refusal to do this in the form requested by the defendant, it was the duty of the Court to present it in some terms sufficiently explicit to avoid any ambiguity or uncertainty. This was not done in the instruction given. The jury were told that in order to a conviction the act must have been done "feloniously." But to this qualifying term was appended a definition which unfairly enlarged its signification. A wrongful act is not necessarily felonious. It is wrong for a man to avoid the payment of his debts, to hold a possession adversely to the true owner or to do any one of many other acts to which no idea of crime ever attaches. A wilful homicide, if wrongful, must from the very nature of the act be felonious in the common law sense. But when we are dealing with the offense of embezzlement, wherein the constituents of crime and those of a mere breach of civil obligation are so easily confused and so difficult to separate, it is exceedingly unsafe to tell a jury, in effect, that they may consider every wrong-doing in that connection as the equivalent of a felony." In a case the facts of which were in substance identical with those in the one at bar the very question now under discussion was passed upon by a Court of exceptional learning and ability, *Cooley, C. J.,* taking part in the decision. In that case the Court

said: "The respondent was treasurer of a Cigar Makers Protective Union, and as such received dues to the amount of one hundred dollars, which he failed to account for and admitted that he had used. He offered to pay it to the Union in installments, but was prosecuted for embezzlement: *Held,* that supposing the case to come within the statute, the prosecution could not be sustained unless the respondent had an intent to convert the property to his own use, and that the question of intent was one of fact for the jury. The trial Judge instructed the jury that if they were satisfied beyond a reasonable doubt that the respondent was treasurer and received the money and spent it, then he was guilty under the information. This was too broad. The respondent might have done this, under some circumstances, with entire integrity of purpose, and might perhaps have been expected by the Union, to do so, if he were a man of known responsibility; and the jury should have had all the facts submitted to their judgment upon this question of intent." *People v. Galland,* 55 Mich., 628. See also *People v. Hurst,* 62 Mich., 276; *Beatty v. State,* 82 Ind., 228. There is no need of multiplying authorities to show the application of the general principle to the facts of our case. If we keep clearly in mind the distinction between those cases on the one hand in which the intent is presumed because it is inseparable from the act, the intent to do the act being the criminal intent, or in which the intent is presumed because of the maxim which runs through the whole law, especially the criminal part of it, that every person must be taken to intend that which is an immediate and natural consequence of his deliberate act, *State v. Phifer,* 90 N. C., 721, and those cases on the other hand in which the act is punishable because of the intent with which it is done, we will not find it difficult to conclude that embezzlement falls within the latter class, and that the burden to disprove the intent is not upon the defendant, as the jury were instructed

STATE *v.* MCDONALD.

in this case, but that the State must prove the intent, as any other fact in order to a conviction. The law does not punish the conversion of the money, but the fraudulent conversion. The Court therefore erred in telling the jury that the appropriation of the money alone raised the presumption of a fraudulent intent, and that as the defendant had introduced no evidence, he had failed to rebut this presumption, and further, that if they believed the evidence they should give their verdict against the defendant. The Court on the contrary should have instructed the jury that the burden was upon the State to prove the intent to their satisfaction, excluding every reasonable doubt, and that in passing upon the question they should consider all the facts and circumstances of the case and draw their inferences as to the true intent of the defendant therefrom.

The defendant moved in arrest of judgment upon the ground that the indictment is defective in that it does not follow the language of the statute, which excepts apprentices from its operation. It is not necessary that we should pass upon this motion, as the case goes back for another trial, and the solicitor can send another bill and cure the alleged defect. This practice has heretofore been adopted in such cases, and without intimating whether or not there is a defect in the indictment we suggest the course indicated as the proper one under the circumstances.

There was error in the respects above pointed out, and for this reason the verdict must be set aside and a new trial awarded. It will be so certified.

New trial.