STATE v. JOHN D. LANCASTER.

(Filed 27 January, 1932.)

**1. Criminal Law G i—Expert may testify to shortage in sheriff's accounts where he has examined records properly identified.**

On the trial of a sheriff for embezzlement it is competent for a witness who has been qualified and found by the court to be an expert in such matters, to testify from his examination of the books and records identified as the public records of the sheriff's office, and likewise those in the office of the county auditor, that there was a shortage in the sheriff's accounts and as to the amount appearing to have been collected and not reported or accounted for by the sheriff, it being a matter of cross-examination of the defendant as to explanation of specific items appearing in the books and accounts from the books introduced in evidence.

**2. Embezzlement B c—Testimony of statement of defendant concerning shortage held competent in prosecution for embezzlement.**

Upon the trial of the sheriff of a county for embezzlement of the county's funds it is competent for witnesses to testify that the sheriff, when the amount of the alleged shortage was revealed to him, stated that it was more than he had thought, and that, upon time to make good being given him from time to time, he had repeatedly given his promise to make a full accounting.

**3. Witnesses B b—Court in its discretion may allow State to call witnesses subpœnaed by defendant.**

It is a matter within the discretion of the trial court in a criminal prosecution to permit the State to call and examine witnesses subpœnaed by the defendant.

**4. Embezzlement A a—Essential element of fraudulent intent may be inferred from the circumstances.**

While the intent to commit the offense of embezzlement is an essential ingredient of the crime, the fraudulent intent may be inferred by the jury under evidence sufficient to show it, and where under such evidence the trial court correctly defines such intent, C. S., 4276, and places the burden of proof throughout the trial on the State to show the intent beyond a reasonable doubt, an exception that the court failed to instruct the jury upon the element of felonious intent is untenable.

**5. Criminal Law G a—Charge in this case did not violate rule that failure to testify raises no presumption against defendant.**

Where the defendant in a criminal prosecution for embezzlement does not take the stand, an exception to the statement of the contentions of the State that the defendant did not deny the alleged shortage when accused of it at the time it was discovered will not be held for error as violating the defendant's right that no presumption against him should be raised from his failure to testify, and if the charge was a misstatement of the contentions it should have been called to the trial court's attention in apt time.

APPEAL by defendant from *Harris, J.,* and a jury, at March Term, 1931, of EDGECOMBE. No error.

The defendant was tried on the following bill of indictment: "The jurors for the State upon their oath present: That John D. Lancaster, not an apprentice nor within the age of 16 years, late of the county of Edgecombe, on .......... January, 1930, with force and arms at and in the county aforesaid, then and there holding the office of sheriff of said county, by virtue of said office did take into his possession $11,500, belonging to said county, and said money, so taken, feloniously, fraudulently, knowingly and wilfully did embezzle, misapply and convert to his own use, against the form of the statute in such case made and provided, and against the peace and dignity of the State. Gilliam, solicitor." The defendant pleaded not guilty. The jury returned a verdict of guilty.

The judgment of the court below is as follows: "It is considered, ordered and adjudged by the court that the defendant be confined in the State's prison for a term of not less than two years nor more than six years, and that the sheriff of Edgecombe County be charged with the execution of this judgment." The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.

The necessary facts will be set forth in the opinion.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*V. E. Fountain and Henry C. Bourne for defendant.*

CLARKSON, J. The first question involved: Is it reversible error for the court below to permit, over the objection of the defendant, expert testimony of witnesses for the State, as to an audit of public records made by them and their conclusions from such investigation of the records? We do not think it error.

Frank Gorham, a witness for the State, it is admitted is an accounting expert. He was a competent witness to testify. *S. v. Brewer, ante,* 187; *S. v. Rhodes, ante,* 101.

Defendant was sheriff of Edgecombe County, Gorham was employed by the commissioners of said county to make an audit of the books of the sheriff's office. It covers the period from 1 July, 1929, to 27 March, 1930. He testified, in part, as follows: "Q. Did your audit show any difference between the amount collected in taxes by the sheriff, Lancaster, and the amount for which he accounted to the proper authorities? A. Yes. The audit was made from the original tax levy that was furnished defendant by the county accountant's office and from reports that had been made in defendant's office by his office help and from

records in the county accountant's office. The audit is based entirely on records which I found in the sheriff's office and the auditor's (accountant's) office. The records in the sheriff's office were delivered to me by some one in the office after the defendant had resigned and the records in the auditor's office were delivered to me by the auditor, M. L. Laughlin. As far as I know the records which I examined were the original county records. They were presented to me and the records were such as are kept in counties generally. Q. Was there any difference in the amount collected and the amount accounted for? A. Yes. Q. What was the difference? A. The difference was between amounts collected and reported and amount of deposits that were made to the sheriff's account from which the various funds were paid—it was $13,190.58." The court below admitted the evidence over objection of the defendant. The defendant excepted and assigned error. We do not think the exception and assignment of error can be sustained. The accounting expert went into detail showing the shortage.

In *S. v. Rhodes, supra,* speaking to the subject: "Where a fact can be ascertained only by the inspection of a large number of documents made up of many detailed statements it would be practically out of the question to require the entire mass of documents and entries to be read by or in the presence of the jury. As such examination cannot conveniently be made in court the results may be shown by the person who made the examination. Wigmore on Evidence (2 ed.), sec. 1234; Chamberlayne on Evidence (Vol. 3), sec. 2317. The production of the documents and the privilege of cross-examination and of the introduction of evidence afford ample protection of the defendant's rights."

In Chamberlayne, the Modern Law of Evidence, Vol. 3, sec. 2317, we find: "A unique forensic situation in which the summary or conclusion of a witness customarily is received is where a very large number of entries, records or separate documents of any sort or kind are submitted. Under such circumstances, a competent witness is permitted to state, from his observation and examination, his conclusion as to what the papers show. The necessity for this concession lies not, as in case of ordinary conclusions, in the difficulty of laying original facts before the jury, provided that time could be spared for the purpose. No difficulty attaches to proving the individual facts of these separate entries. Nor is the subject-matter necessarily one of technical skill. The consumption of time, however, might well be unduly large concerning the existence of matters not seriously controverted. For the expediting of trials a presiding judge may well be justified in economizing the court's time by receiving the conclusion of the witness. The rights of the adverse party are frequently safeguarded by requiring the production of

the original books of account or other documents. In other cases all that may be required is their presence in court, if demanded, or even their introduction into evidence, to render effective the extended cross-examination which will usually be accorded. As is abundantly shown in the foregoing decisions, *the rule is equally applicable to criminal as to civil cases.*" (Italics ours.)

M. L. Laughlin, a witness for the State, testified, in part, that he was auditor of Edgecombe County. That the taxbooks made up by himself and assistants were turned over to the defendant sheriff 1 October, 1929. The matter was called to the attention of the board of county commissioners, on 13 March, 1930, of alleged difference between the collections of the sheriff and the amounts for which he had accounted. The board met that night and defendant sheriff attended. "We asked him if he could not make a deposit to cover the amount of money that he was due the county, and he replied that he had about sixteen or seventeen thousand dollars in checks and money in his vault and that he would straighten out the matter the following day. About 8 March, after the accounts for the first of March had been audited and report had been made by Mr. Lancaster, I asked him for checks to cover the turnover and he told me he would attend to it that afternoon. Q. How much did your records show he was due you at that time? A. About $23,000 just prior to the first of March." This evidence was admitted over the objection of defendant, the defendant excepted and assigned error. We think from the authorities cited above, in this and other jurisdictions, the county accountant's testimony was competent.

The auditor further testified that the defendant, on 14 March, deposited $7,044.07 and later one or two little deposits. At the request of the defendant he was given further time. The auditor further testified that defendant said "that he didn't have any idea he was out of the way as much as he was, that if they would give him a little more time, say twenty-four hours, he would clear the matter up. They granted him four days time. We had another meeting on the night of 24 March, he was present only a small part of that meeting, the biggest thing he did was resign, and after he resigned he got out. At that meeting he made the statement that on the first Monday in March he was very busy, and the road board was meeting in his back office and two or three other people were in there from Rocky Mount, and he had a bunch of money lying on his desk and he was called out, and when he returned, approximately $14,000 was gone. That was the first time he had said anything about that. He said he had not told it before because he was hoping to catch the one that did it. I made an audit

from the records which were turned over to Mr. Lancaster and reports which were made in his office. . . . Q. What was the difference according to your audit between the amount of money which he collected, total amount which he collected, and the total amount which he paid off? A. $14,756.32." The above question and answer was objected to by defendant and exception and assignment of error taken. For the reasons given in the authorities above cited, we think the evidence is competent.

W. E. Page, chairman of the board of county commissioners, testified, in part, which is unobjected to: "The alleged shortage was called to my attention on 13 March, by Mr. Laughlin. I called a meeting for that night and Mr. Lancaster was present. We talked to Mr. Lancaster about the alleged amount not turned over and he told us the reason he had not turned over the money, he had a few bad checks and did not want to get his entire book in bad shape, that his bank book was in balance, he said he had $16,000 or $17,000 in his vault and that he was holding it on account of the few bad checks that had come back, and he told us that if we would give him to the following Saturday he would make all of his arrearage good. The board told him that unless he could make satisfactory settlement that they would be forced to ask for his books. We had another meeting on the 20th. He had not made good by that time and asked us to prolong that time until the following Monday. It was not deposited or made good by that time. We had the final meeting on 24 March, and the money had not been deposited at that time. The alleged shortage at that time according to my recollection, was $12,000 or $14,000. At the last meeting he made the statement that on the first Monday when he was getting ready to make his deposit his room being full of people that he was called out quickly and left and when he came back he was about fourteen thousand dollars short. He said he had not reported this as he thought he could spot the people who had gotten his money but he failed to get them. He said the money was in the private office back of the main office. He said the road board was meeting there and some other people."

Miss Dolores Pitt, who at the time it is alleged the sheriff misappropriated or embezzled the money, was clerk in his office, testified that she collected the money and that at the time she collected the money she gave the person who paid the tax a receipt and kept blue duplicate sheet but that she made out all turnover sheets and she herself gave these turnover sheets to the auditor and attached to this sheet duplicate blue copy of the tax receipt that she gave the people when they paid the taxes; that she turned over into the possession of the sheriff all the money that was collected on taxes in that office while

she was there. The State further offered evidence tending to show that
she had nothing to do with the money after she turned it over to the
sheriff, that the sheriff made deposit in the bank and looked after the
money after it was in his possession.

At the close of the State's evidence and at the close of all the evidence
the defendant made motions to dismiss the action or for judgment of
nonsuit. C. S., 4643.

We think the evidence ample to be submitted to the jury. In fact,
defendant has never denied the shortage, and was given time to pay it
when called to his attention, and said he had the money in his vault.
He stated "he didn't have any idea he was out of the way as much
as he was." Then, afterwards, he made the statement "He was getting
ready to make his deposit, his room being full of people, that he was
called out quickly and left and when he came back he was about $14,000
short."

The next contention of defendant: Is it error for the court to permit
at the conclusion of the defendant's evidence, the defendant having
offered evidence only as to his character, to permit the solicitor to call
and cross-examine three witnesses which had been summoned and sworn
for the defendant, but not offered as a witness, upon matters not thereto-
fore disclosed by the evidence in the case? We do not think it error.

We think this a matter which is ordinarily in the sound discretion of
the court below. *S. v. Allen,* 107 N. C., 805; *Smith v. R. R.,* 147 N. C.,
607. On the record there is no evidence of the abuse of this discretion.

The defendant further contends that the court below in charging the
jury as to the essential elements of the crime of embezzlement, did not
mention the intent of the defendant as a necessary element. We do not
think the contention can be sustained.

The following is stated in *S. v. McDonald,* 133 N. C., at pp. 683-4:
"The crime of embezzlement is the fraudulent conversion of property
by one who has lawfully acquired possession of it for the use and benefit
of the owner. *Embezzlement was not a common law offense. S. v. Hill,*
91 N. C., 561. . . . It was made a crime in this State by The Code,
sec. 1014 (C. S., 4268). . . . In embezzlement there must have
been not only a relation of trust and confidence between the owner and
the person who is charged with the conversion, but the property must
have been appropriated with a fraudulent purpose. Clark's Criminal
Law, secs. 99 and 100. We think, therefore, that the conversion of funds
by a person who has been entrusted with them becomes criminal as an
embezzlement only by reason of this corrupt intent, and it is as necessary
for the State to establish the intent as a fact independent of the con-
version as it is to prove the bad intent in a prosecution for larceny as

a fact apart from the taking. The intent to defraud is no more implied in a case of embezzlement than the felonious intent is from the act of taking in a case of larceny."

In *S. v. Falkner,* 182 N. C., at p. 795-6, we find: "Again, in *S. v. Morgan,* 136 N. C., 628, *Walker, J.,* speaking for a unanimous Court, says: 'If the act may be innocent or not according to the intent with which it is done, or if its criminality depends upon the intent, it is incumbent on the State to show the intent or to show the facts and circumstances from which the intent may be inferred by the jury, and it is necessary that the jury should find the intent as a fact before the defendant charged with the commission of the act can be adjudged guilty of a crime,' citing *S. v. McDonald,* 133 N. C., 680."

Intent is inferred from facts in evidence, and it is rarely shown by direct proof. There was ample evidence to go to the jury to sustain the offense charged in the bill of indictment. C. S., 4270. The court below charged the jury: "The crime of embezzlement is the felonious and fraudulent conversion of property by one who has lawfully acquired possession of it for the use and benefit of another. To embezzle is for an agent fraudulently to misapply the property of his principal. . . . That the State must satisfy you from the evidence beyond a reasonable doubt that this defendant knowing that this property was not his own, converted it to his own use. . . . The defendant contends there is no evidence that there is any intent to defraud the county, no evidence that Mr. Lancaster appropriated it for his own use or used it for the benefit of anyone else. . . . The law, as I understand it, is this, that when an act is committed, the intent to do the act is criminal, but when the act becomes criminal only by reason of the intent unless the intent is proven the offense is not proven and this intent must be found by the jury as a fact from the evidence. You, the jury, must say from the evidence whether the State has offered evidence which would satisfy you beyond a reasonable doubt, not only that the defendant is short, did not turn over the money, but that he did that with the intent to defraud the county, that he had the felonious or fraudulent intent to misappropriate the money. If you are so satisfied of this from the evidence, beyond a reasonable doubt, it would be your duty to convict the defendant. But remember that you must find that this shortage was done with the felonious and fraudulent intent to misappropriate this money which belonged to the county." Taking the charge as a whole, with the contention of defendant, as stated by the court below, we think the charge full and plenary. The fraudulent intent, within the meaning of the statute, is the intent to "embezzle or otherwise wilfully and corruptly use or misapply," the money of the county for purposes other than that for which they are held. C. S., 4270, *supra. S. v. Dunn,* 138 N. C., 672.

STATE *v.* LANCASTER.

"The fraudulent appropriation is to be inferred from facts.  .  .  .
Flight, concealment, *evasions,* form strong elements of proof." 2 Wharton's Criminal Law ((11th ed.), part sec. 1277, pp. 1490-1-3. .

A group of exceptions and assignments of error made by defendant is in reference to alleged comments by the court below upon the failure of the defendant to take the witness stand in his own behalf. C. S., 1799, in part, is as follows: "In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him," etc.

An examination of the record, we think, shows that the court made no comment upon the failure of the defendant to testify in his own behalf. The court below stating the contentions of the defendant, in substance said that the defendant did not have to go upon the witness stand, but could rely on the State's evidence. All the references complained of in defendant's brief refer to the fact that defendant did not deny the shortage at the time it was called to his attention by the board of county commissioners, and did not explain the matter. That there was no evidence offered in this case of any mistake in the figures. Defendant might have offered such evidence through other persons familiar with the facts. The matters complained of by defendant, the court below referred to them as *contentions,* if they were inaccurately stated at the time, they should have been called to the attention of the court, otherwise they are waived. *S. v. Geurukus,* 195 N. C., 642. These exceptions and assignments of error cannot be sustained.

The court below gave the contentions accurately, fully and fairly for both the State and defendant. The charge was all that defendant, from the evidence, was entitled to. The court charged: "This defendant comes into court like all defendants in a criminal action in North Carolina. He is presumed to be innocent and that presumption comes in court with him and remains with him throughout the trial and the only way that can be repudiated is for the State to offer evidence which satisfies you beyond a reasonable doubt of his guilt. The burden is always on the State of North Carolina to satisfy you, to offer you evidence in every criminal case which will satisfy you of defendant's guilt beyond a reasonable doubt before you can convict the defendant." The exception and assignment of error that the caution to the jury in effect was an expression of opinion and impinged C. S., 564, is untenable. It was the usual and ordinary warning given to the jury and the court finished the charge as follows: "Let your verdict be a fair and impartial one based on the evidence and the evidence alone. Take the case and say how you find it."

FRANKLIN *v.* REALTY CO.

The record shows that the defendant's general reputation up to the time of this indictment was good. This was shown by a long list of witnesses, some 48. There is no error of law in the trial of the action in the court below. The matter was one of fact for the jury to determine; in law, we find

No error.