The defendant was indicted for the embezzlement of $4,652.12. The evidence disclosed that the defendant had been duly appointed administrator of the estate of Jos. Ellis on 27 May, 1930. On 27 May, 1931, he filed an annual account showing certain proper disbursements and a balance due of $4,678.83. On 4 May, 1933, he tendered a final account showing a balance to be paid to the distributees of $4,652.16. The clerk did not accept this as a final account and issued a citation and order to show cause. The defendant appeared at the hearing and through counsel stated that he had invested the money in certain notes and presented the notes, stating that he held these notes as administrator as security for the money, and that, while there were two mortgages ahead of the ones securing the notes, arrangements had been made to cancel one of them.
The State also offered the evidence of Mr. LeRoy, a practicing attorney, who testified that he represented some of the heirs at law of decedent and that he had made a demand for settlement. It did not appear from the evidence where the heirs at law were living or who they were. Thereupon the State offered an affidavit of the defendant, which is as follows:
"That he is the respondent in this cause; that he was duly appointed and qualified as administrator of the estate of Joseph Ellis on 27 May, 1930, with the American Surety Company as surety upon his bond *Page 390 
in the amount of $10,000, and that shortly thereafter he received, as assets of said estate, the sum of $5,000, same being proceeds of United States Government Savings Certificates. That, while at the time of his appointment and qualification as aforesaid, respondent had information as to the beneficiaries of said estate, he was not at that time nor is he now sufficiently advised as to the personnel of said beneficiaries, or their relationship to his intestate, or the nature and propriety of their claims upon said estate as to authorize or permit the respondent to make a settlement with them or their legal attorney in fact and law. That, at such time, too, the respondent was not advised as to the amount of debts, if any, owing by said estate, for which he was required by law to make advertisement; that for these and other reasons respondent actually believed at such time, whether rightly or wrongly, that he was required by law to retain possession of said fund for the full term of two years, and was further required to invest same during said period.
"That prior to his qualification as administrator, as aforesaid, to wit, on 18 November, 1929, this affiant, being largely indebted to his wife, Margaret W. Cohoon, for advances accumulating over a period of years, executed to her in payment and satisfaction of said indebtedness, twelve certain notes aggregating the sum of $24,000, secured by a deed of trust on a certain farm in Pasquotank County belonging to affiant, known as Black Acre Farm. That at the time when, as aforesaid, affiant received the funds belonging to said estate, to wit, the sum of $5,000, the said Margaret W. Cohoon was in need of ready money in order to make improvements upon certain real estate belonging to her. And that, in this situation, this affiant, honestly believing, as aforesaid, whether rightly or wrongly, that it was not only his right but his duty to hold and invest said funds during said two-year period, and having further the honest purpose to secure said estate against any possibility of loss, proposed to the said Margaret W. Cohoon, that he would advance her a large portion of said fund, provided that she would thereupon deposit with this affiant, as said administrator, the notes aforesaid, aggregating $24,000, to be held by affiant as such administrator, as security for said estate and the due settlement thereof. That while it is true that at the time of the execution of said notes, secured by said deed of trust, there was upon the records of Pasquotank County two prior deeds of trust, one securing the Virginia-Carolina Joint Land Bank in the sum of $8,000, payable in installments, and the other securing the First and Citizens National Bank in the sum of $5,000, the latter of these deeds of trust had been executed for a temporary purpose only, with an intent at all times on the part of this affiant to substitute other security for it. That while the effectuation of this intent had been delayed for some *Page 391 
time, due solely to procrastination, this affiant had, long prior to the institution of this proceeding, or to the issuance of the order of 17 February, arranged with said bank to substitute other security for said deed of trust. That this has now been done, with the result that said notes in the sum of $24,000 are now secured by a deed of trust, which is subject only to the claim of the land bank aforesaid, in the sum of only $8,000, and with the result, further, that the security held by said estate for the due settlement thereof is now, as it has always been under the intent of this affiant, ample and sufficient.
"That Black Acre Farm is situate in the upper reaches of Pasquotank County, and contains approximately 360 acres, of which 240 acres are under cultivation, the remainder being cut-over timber lands suitable for pasturage. That said 240 acres of cleared land is, and was in 1930, of extraordinary fertility, highly improved and intensely cultivated. That it is equipped with a modern home and modern outbuildings. That the barn, particularly, is one of the most modern and best equipped in this section. That the soil is peculiarly adapted to the raising of corn and soybeans, for which purpose it was used in 1930, and since, together with the raising and breeding of hogs and cattle. That said farm, with its equipment, represents an investment of over $60,000 on the part of this affiant, and that, in the opinion of this affiant, said farm was well worth the sum of $50,000 in April or May, 1930, when the investment of the funds of said estate was made. That at such time corn was selling for $1.00 per bushel; soybeans for $1.40 per bushel; live hogs for 10 cents per pound, and veal calves were 7 and 8 cents per pound. And that, while at said time the imprint of the later catastrophic depression had been manifested, it was then the belief of this affiant, and of the general public, including experienced economists as affiant is advised, that such deflation was but temporary, and that prices of farm products would soon return to their former level, together with general prosperity.
That through a process of general and gradual decline farm products reached their low level in 1932. That during said year corn was selling at 25 cents per bushel; soybeans for 35 to 50 cents per bushel; live hogs from 3 to 3 1/2 cents per pound, and live veal calves for 5 cents per pound — with the result that, as the price of farm products, and particularly of those raised upon the Black Acre Farm, sank to these unprecedented levels, the market value of farm land, including the Black Acre Farm, shrunk in such proportions as to render it impossible to sell them, or to borrow upon them any appreciable portion of their real intrinsic value. And that, while it is true that the price of farm products has notably increased in the last month or two, such increase has not been sufficiently prolonged or become so stabilized, as yet, as to seriously affect the selling or borrowing value of farm land. *Page 392 
"That this affiant has had no intent to commit a contempt of court. That the investment of the funds belonging to said estate aforesaid, whether or not authorized by law, was made in good faith, with the present intention of repayment, which still abides, and in the full and honest belief that the security for said investment was far more than ample. That in the opinion of this affiant the intrinsic value of said Black Acre Farm, even under present conditions, is not less than $25,000 to $30,000. That at the time of said investment affiant had not the slightest doubt but that the money required to settle said estate would be forthcoming from said investment, and could be realized thereon at the time when settlement of said estate was required by law. That he has no purpose now, and has never had the purpose, to evade the due settlement of said estate; but that a cash settlement at this time is absolutely impossible. That the affiant has exhausted his resources in the effort to borrow the money, and has been unable to do so, due in part to the reason aforesaid, and due even more to the fact that there is no money available. That he has further tried to sell said farm at a heavy sacrifice — without avail. That these efforts, both to borrow the money and to sell the farm, have been constant and persistent, originating at a time long prior to the institution of this action, or the issuance of the citation to file a final account for settlement. That affiant has never had the purpose to evade or postpone his duty to file said final account, or any other account. That he has read the affidavit of Thomas J. Markham filed in this cause, and that the same is in all respects true. That in May, 1931, and in December, 1932, affiant filed with the clerk of this court accounts which show fully and accurately the totality of receipts and disbursements with reference to said estate. That he has heretofore filed a final account, which is as comprehensive as is possible under the circumstances. That as aforesaid, it has been and is now impossible for him to settle said estate, but that, if affiant can be afforded a reasonable time, the full and just settlement of said estate is assured."
There was no further evidence offered by the State and the defendant moved for judgment of nonsuit. The motion was overruled and the defendant excepted. The defendant was convicted and it was adjudged that he be confined in the State's prison for a term of not less than five years nor more than eight years.
From the foregoing judgment the defendant appealed.
In general terms embezzlement "is the fraudulent conversion of property by one who has lawfully acquired possession of it for the use and benefit of the owner." The mere act of converting or appropriating property to one's own use is not sufficient to constitute the offense. In order to convict, the State must not only offer evidence of appropriation, but it must go farther and offer evidence that such act was done with a fraudulent purpose or corrupt intent. This idea was expressed in S. v. McDonald,133 N.C. 680, 45 S.E. 582, in these words: "We think, therefore, that the conversion of funds by a person who has been entrusted with them becomes criminal as an embezzlement only by reason of this corrupt intent, and it is as necessary for the State to establish the intent as a fact independent of the conversion as it is to prove the bad intent in a prosecution for a larceny as a fact apart from the taking. The intent to defraud is no more implied in a case of embezzlement than the felonious intent is from the act of taking in a case of larceny. . . . It follows, therefore, from what we have said that if the mere act of taking will not raise the presumption of a felonious intent in a prosecution for a larceny, there can be no valid reason why the act of conversion should do so in the trial of an indictment for embezzlement." See S. v. Morgan, 136 N.C. 628; 48 S.E. 670; S. v.Falkner, 182 N.C. 793, 108 S.E. 756; S. v. Grace, 196 N.C. 280,115 S.E. 399; S. v. Lancaster, 202 N.C. 204, 162 S.E. 367; S. v. Rawls,202 N.C. 397, 162 S.E. 899. In order to secure evidence of corrupt intent or fraudulent purpose the State went into the defendant's camp. It offered an affidavit made by the defendant in a contempt proceeding. This was the only evidence of intent produced at the trial. Consequently, this affidavit is the sole evidence upon which conviction could be predicated. Analyzing the affidavit, the State's evidence shows the following facts:
1. That the defendant was duly qualified as administrator of the estate of Joseph Ellis on 27 May, 1930, and received the sum of $5,000 due said estate, and that at the time of such appointment and qualification the defendant did not know who the beneficiaries of the estate were or the nature of their claims or the amount of debts due by the deceased, and that under these circumstances the defendant "actually believed at such time, whether rightly or wrongly, that he was required by law to retain possession of said funds for the full term of two years and was further required to invest same during said period."
2. The defendant owned a valuable and fertile farm in Pasquotank County, containing 360 acres of land. 240 acres of said land was cleared, of extraordinary fertility, highly improved and intensely cultivated, and equipped with a modern home and modern outbuildings. That said *Page 394 
farm with improvements thereon had cost over $60,000 and was well worth the sum of $50,000 in May, 1930.
3. That in November, 1929, the defendant was indebted to his wife in the sum of $24,000, and as evidence of said indebtedness he had executed and delivered to her twelve promissory notes in the sum of $24,000, and in order to secure the same had executed and delivered a deed of trust upon the farm aforesaid; that at the time said deed of trust securing said $24,000 was executed and delivered, there were two prior mortgages upon the property, to wit, one for $8,000, payable to a land bank, and one for $5,000 payable to the Citizens Bank. The $5,000 mortgage had been executed for a temporary purpose and had subsequently been canceled, leaving the land bank mortgage of $8,000 as a first mortgage upon the property and the $24,000 mortgage as a second encumbrance upon the property.
4. That after receiving the funds as administrator "the said Margaret W. Cohoon was in need of ready money in order to make improvements upon certain real estate belonging to her, and that in this situation this affiant honestly believing, as aforesaid, whether rightly or wrongly, that it was not only his right but his duty to hold and invest said funds during said two-year period, and having further the honest purpose to secure said estate against any possibility of loss, proposed to the said Margaret W. Cohoon that he would advance her a large portion of said fund, provided that she would thereupon deposit with this affiant as said administrator the notes aforesaid, aggregating $24,000, to be held by affiant as such administrator as security for said note and the due settlement thereof."
5. That the value of real estate in Pasquotank County and the value of farm products theretofore raised in abundance upon said land, declined and dwindled as a result of the depression and shrunk to unprecedented levels, rendering it impossible to sell the farm or to convert the security into cash.
6. "That the investment of the funds belonging to said estate as aforesaid, whether or not authorized by law, was made in good faith with the present intention of repayment, which still abides, and in the full and honest belief that the security for said investment was far more than ample. That in the opinion of this affiant the intrinsic value of said Black Acre Farm, even under present conditions, is not less than $25,000 to $30,000; that at the time of said investment affiant had not the slightest doubt that the money required to settle said estate would be forthcoming from said investment and could be realized thereon at the time when settlement of said estate was required by law. That he had no purpose now and never had had the purpose to evade the due settlement of said estate, but that a cash settlement at this time is absolutely *Page 395 
impossible; that affiant has exhausted his resources in an effort to borrow the money and has been unable to do so; . . . that he has further tried to sell said farm at a heavy sacrifice without avail."
The foregoing constituted substantially all the evidence offered by the State. While other testimony was offered, there was no contradiction of any of the foregoing facts. The defendant offered no evidence.
Reducing the transaction to its fundamental aspects, it appears that an administrator with approximately $4,600 in his hands belonging to an estate, advances the money to his wife and receives in consideration therefor as administrator the notes of the administrator payable to the wife and secured by a third mortgage upon land owned by the administrator, and when the total encumbrance upon the land at the time of the trial did not exceed fifty per cent of the present market value or twenty per cent of the original cost of the property.
Upon the foregoing facts the State proceeded upon the theory that the advancement of the money to the wife and the taking of his own note secured by a third mortgage constituted a fraudulent and wilful misapplication and conversion of the fund to his own use within the meaning of C.S., 4268.
This Court held in Dortch v. Dortch, 71 N.C. 224, that an administrator: "If there are reasons why he should not retain it, in order to meet the exigencies of his office, or as in our case, to pay debts, if established, or because there was no one here authorized to receive it, he is not only permitted but encouraged to invest it in interest-bearing securities, for the benefit of the fund." In that case an administrator loaned money belonging to an estate upon personal security which was admitted to have been good at that time, but afterwards became worthless as a result of war. Thereafter the administrator took a note secured by a mortgage from the debtor, and it was conceded that the land was amply sufficient to pay the debt, although the money had not been collected by reason of protracted litigation. The Dortch case was cited in Marshall v.Kemp, 190 N.C. 491. See, also, 44 L. N. S., 928-n. However, under ordinary circumstances it is the primary duty of an administrator or executor to collect the assets of the estate and disburse the funds promptly as provided by law, and the unmistakable trend of the decisions in this State indicates that an administrator loans or advances money of the estate at his peril and at the peril of his bondsman. Nevertheless, such transactions, in extraordinary cases, such as in Dortch v. Dortch, are not criminal acts, certainly, unless consummated in pursuance of a fraudulent purpose or corrupt intent.
But, where is the evidence of fraudulent or corrupt intent? All of the evidence offered by the State disclosed that the defendant did not use for his own direct benefit a penny of the money. The wife used it *Page 396 
for making improvements upon her own land. All of the evidence of the State disclosed that the property securing the advancement, even under present conditions, greatly exceeded the amount of the entire indebtedness. All of the evidence for the State disclosed that the transaction was made in good faith and in the honest belief that the money could be made presently available upon demand of the proper parties. Therefore, when the State offered the affidavit of the defendant as the sole evidence of fraudulent or corrupt intent, the law, speaking through S. v. Mace, 118 N.C. 1244,24 S.E. 798, said: "The rule is that while a party cannot introduce testimony to discredit or impeach the moral character of his own witness, yet, if the facts which the witness testified to are against the party introducing him, he is not precluded from showing by other witnesses a different state of facts."
Again, this Court has said in Smith v. R. R., 147 N.C. 603,61 S.E. 575, that: "While it is accepted doctrine that one who offers a witness presents him as worthy of belief, and except, perhaps, where an examination is required by the law, as in the cases of subscribing witnesses to wills and deeds . . . a party will not be allowed to disparage the character or impeach the veracity of his own witness, nor to ask questions or offer evidence which has only these purposes in view, it is always open to a litigant to show the facts are otherwise than as testified to by his witness. . . . And this he may do, not only by the testimony of other witnesses, but from other statements of the same witness, and at times by the facts and attending circumstances of the occurrence itself, the res gestae."
See, also, Worth Co. v. Feed Co., 172 N.C. 335, 90 S.E. 295.
In the case at bar the State did not show or attempt to show a different state of facts, but staked the fortunes of battle upon the affidavit. Therefore, the State proved: (1) That the defendant, without the slightest evidence of collusion, advanced the money to his wife and thus did not receive any pecuniary benefit from the transaction; (2) that the security for such advancement at the time it was made was wholly sufficient and ample; (3) that the advancement was made in the exercise of good faith and reasonable prudence and in the honest belief that the money would be presently available upon demand; (4) that the advancement was made without fraudulent or corrupt intent.
The law does not build the crime of embezzlement upon such proof, and the motion for nonsuit should have been allowed.
Reversed. *Page 397