STATE v. E. E. GENTRY.

(Filed 24 March, 1948.)

**1. Criminal Law § 52a—**

Motion to nonsuit in a criminal prosecution is properly denied if there is any competent evidence to support the allegations of the bill of indictment, considering the evidence in the light most favorable to the State, and giving it the benefit of every reasonable inference fairly deducible therefrom.

2. **Embezzlement §§ 1, 7—Evidence held to show defendant was "agent" in receiving funds within meaning of embezzlement statute.**

The evidence tended to show that prosecuting witness requested defendant to refinance a chattel mortgage on the witness' automobile, that defendant agreed to do so for ·a fee, that defendant obtained cash from a finance company on a second chattel mortgage and notes executed by the witness or purported to have been executed by him, and advised the witness that he had sent the money to pay off the prior mortgage, that the prior mortgage was not paid, and that defendant refused to reimburse the witness. *Held:* The evidence is sufficient to be submitted to the jury on the charge of embezzlement by defendant of funds received by him as agent of the prosecuting witness. G. S., 14-90.

3. **Embezzlement § 2—**

Fraudulent intent within the meaning of G. S., 14-90, is the intent of an agent to embezzle or otherwise willfully and corruptly use or misapply the property of the principal or employer for purposes other than those for which the property is held.

4. **Criminal Law § 42d—**

Where. in a prosecution for embezzlement, testimony in regard to papers upon which defendant obtained money from a finance company as agent for the prosecuting witness is competent, the introduction in evidence of the papers is competent for the purpose of corroboration.

5. **Criminal Law § 48c—**

Exception to the general admission of evidence competent for a restricted purpose will not be sustained in the absence of a request by appellant, at. the time the evidence is admitted, that its admission be restricted.

6. **Criminal Law § 81c (3)—**

Defendant was charged with embezzlement of funds obtained by him as agent of the prosecuting witness to pay off a chattel mortgage on the witness'·car. *Held:* The mortgagee being the only foreign corporation referred to by witnesses and that it repossessed the car because of default being a reasonable inference from the evidence, testimony of prosecuting witness to this effect is harmless, even though he did not give the name of the company and had no personal knowledge of the reason for repossession.

7. **Criminal Law § 84e—**

Defendant was charged with embezzlement of funds obtained by him as agent of prosecuting witness to pay off a chattel mortgage on the witness' car. Witness testified that defendant stated he had sent the money to the mortgagee, that witness thereupon emphatically challenged the veracity of the statement and accused defendant of not having sent the money. *Held:* Failure of defendant to deny witness' accusation is competent as an implied admission that defendant had not sent. the money.

**8. Criminal Law § 78e (2)—**

Ordinarily, misstatements in recapitulating the evidence or in stating defendant's contentions must be brought to the attention of the trial court in time to afford opportunity for correction.

ERVIN, J.. took no part in the consideration or decision of this case.

APPEAL by defendant from *Alley, J.,* at August Term, 1947, of CALDWELL.

Criminal prosecution upon a bill of indictment charging defendant with embezzlement of $565 allegedly received and had by him for and on the account of Woodrow Price. G. S., 14-90.

Upon the trial in Superior Court the State offered the testimony of Woodrow Price, and written papers identified by him, and the oral testimony of Luther Bolick, the manager of the National Trading Company of Hickory, North Carolina.

The testimony of Woodrow Price tended to show the following narrative of facts: In 1941 he, Woodrow Price, purchased a Chevrolet car in Baltimore, Maryland,—trading in an old car in part payment, and financing the balance of the purchase price through National Investment Company of Baltimore, that is, he borrowed some money from that company, and gave to it "a title paper" as security therefor. In 1945 he came back to North Carolina and brought the car with him. He had a 1945 State of Maryland registration card for the car, Exhibit C, which contained detailed description of car and engine. At that time he still owed over $600 on the car, and, after returning, he made two or three payments, reducing the amount to $437. He then went to see defendant E. E. Gentry at his place of business in Lenoir, North Carolina, and told him that he, Price, needed the money to pay off what was owing in Baltimore so that he could have title transferred, so he could get a North Carolina tag. Gentry said he would refinance it for $25. Price said all right, and at the suggestion of Gentry, Price signed three papers, partly printed and partly written,—the writing in which was filled out there in Gentry's place of business by a boy who was working for Gentry— Gentry being present. These papers identified by Price are: (1) A paper captioned "Borrower's Statement." (This is Exhibit A.) (2) A paper reading in pertinent parts: "National Trading Company, Hickory, North Carolina. In account with Woodrow Price, R. F. D. #9, Lenoir, North Carolina. Date: Feb. 11, 1946. Loan: $500. Finance and Insurance $96.76. Total Note—$596.76. Payable—Payments of $49.73. First Installment due March 11, 1946. Copy of this Transaction Received: Details of which are correct. Signed—Woodrow Price." (This is Exhibit B.) (3) A paper purporting to be a note for $596.76, dated 11 February, 1946, payable to the order of National

Trading Company at Hickory, North Carolina, in twelve equal monthly installments of $49.73 due on the 11th of each month, starting 11 March, 1946, until the full amount of the principal shall have been paid with interest on deferred payments after maturity, etc. This note is appended and attached to what purports to be a chattel mortgage from and signed by Woodrow Price to National Trading Company of Hickory, North Carolina, acknowledging an indebtedness to it in the sum of $596.76, "payable in accordance with the terms of a certain note of even date herewith, executed by the undersigned and hereto attached," and conveying as security for the indebtedness a 1941 Chevrolet situated at Route #9, Lenoir, N. C., and of same description as that contained on the 1945 State of Maryland registration card—Exhibit C—to which reference is above made. Price testified that his purported signature to the purported chattel mortgage is not in his handwriting. (The note and purported chattel mortgage are Exhibit D.)

After these papers were filled out and signed, as above stated, defendant kept them. Price told Gentry how much money he wanted to borrow to pay off what he owed in Baltimore. Gentry said he would send it to Baltimore and have the title transferred and come back to him,—and Price gave to Gentry the receipt book he had obtained from the National Investment Company of Baltimore, showing every payment he had made. Gentry did not then tell Price where he intended to finance the car,—but did sometime later. Price made two payments of $40 on 16 February, 1946, and $25 on 1 March, 1946, to Gentry, and the boy that worked for Gentry gave him receipts bearing these dates. (These are Exhibits E and F.)

Sometime in March, the Baltimore company took the automobile from Price.

In this connection Price, while on the witness stand, was asked this question: "Why did the Baltimore company take your car?", to which he replied, "They had never received any money for it." As to this the solicitor for the State and counsel for defendant stipulate that: "The defendant did not object or except to the foregoing question. After the question had been propounded to the witness by counsel for the State, and after the witness had answered the question, as set forth above, and after the jury had heard the answer of the witness, the defendant for the first time objected to the answer, but did not move to strike out the same. The objection of the defendant to the answer was overruled, and the defendant excepted. This is Assignment of Error Number 11."

The narrative of Price's testimony continues: In a later conversation Gentry told Price that he had sent a company check to Baltimore to pay what was owing there and that the title should be back. Gentry said he got the money, $500, from the National Trading Company and sent it to

Baltimore. Price, who was then working at a furniture factory, stopped by every evening to ask about it, and Gentry said there was no need to worry about it . . . But Price never did get a title from Gentry or anyone else, and he lost his car. In a later conversation Gentry said he got the money and sent his personal check to the finance company in Baltimore. This was after the car had been taken from Price. Price further testified: "After that I had a conversation with Mr. Gentry. I went to his place of business and asked him if he wanted to pay me my money back or part of the money back that I had lost on my car, and he said No, that he had paid the National Trading Company and that he was not going to lose any more money on it . . . He said that he had sent the money to Baltimore . . . that he had sent his personal check . . . He never did give me any money back. When he told me he had sent his personal check to the finance company, I told him he was a — — liar, that he had never sent them anything. He didn't say anything for a little bit and he didn't remember what he sent but he didn't deny it when I said he had not sent them anything. He didn't say whether he had or not. I lost my automobile and my money. At the time I talked to him he told me that he had taken those papers to the National Trading Company and got $500 from them."

Then on cross-examination Price testified: "I didn't give him anything except the money for the two receipts totaling $65, and that was on a debt."

The witness Luther Bolick testified: "I live in Hickory and am manager of National Trading Company and have custody of the checks and securities of said company. There is no record of any check being issued to any finance company in Baltimore on this car. When the loan was made cash was issued rather than a check. The paper writing marked . . . Exhibit D on an automobile is held by the National Trading Company. It is the property of said company. There have been three payments made on that paper, $49.73, a total of $149.19. Its credits are to Woodrow Price. The first payment was on 14 March, 1946; the second 12 June, 1946, and the third 14 June, 1946. There was paid to Mr. Gentry on this account $500 in cash." Q. "When did you first receive notice that there was any other written claim on this automobile?" Objection—overruled—exception No. 11A. A. "I am not sure about the exact date, but it was about July or August 1946." Then on cross-examination the witness testified: "We simply made Mr. Gentry a loan of $500 and accepted those papers as collateral on that loan." And on re-direct examination the witness concluded his testimony by saying, "We advanced $500 on that paper. I didn't know what he got it for or anything about any trade between he and Mr. Price."

The State rested, and defendant made motion for judgment as of nonsuit. The motion was denied and he excepted. Then defendant rested, and renewed his motion for judgment as of nonsuit. Motion was denied and defendant excepted.

Then counsel for State was permitted to recall Woodrow Price, who testified: "After my car was taken I had a conversation with Gentry and asked him whether or not he had received his personal check back. I asked him if he had a check or anything to show he sent the check up there, and he said No, he didn't have anything to show that he had sent the money up there, just my word."

Again the State rested, and defendant, reserving exception to denial of his motion for judgment as of nonsuit, again rested, and renewed his motion for judgment as of nonsuit, to the denial of which he again excepted.

Verdict: Guilty as charged in the bill of indictment.

Judgment: Imprisonment in the common jail of Caldwell County for the term of three years and assigned to do labor under the supervision of the State Highway and Public Works Commission.

Defendant appeals therefrom to the Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*W. H. Strickland for defendant, appellant.*

WINBORNE, J. The statute, G. S., 14-90, under which defendant is indicted and convicted, provides in pertinent part that "If . . . any agent, . . . except persons under the age of sixteen years, of any person, shall embezzle or fraudulently or knowingly and willfully misapply or convert to his own use, or shall take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or convert to his own use any money, goods or other chattels . . . or any other valuable security whatsoever belonging to any person . . . which shall have come into his possession or under his care, he shall be guilty of a felony, and shall be punished as in cases of larceny."

In the light of the provisions of this statute, defendant stresses for error the denial of his motions for judgment as of nonsuit. It is the well settled law in this State that in considering a motion for judgment as of nonsuit in a criminal prosecution, the evidence must be taken in the light most favorable to the State, and if when so taken there is any competent evidence to support the allegations of the bill of indictment, the case is one for the jury. And, on such motion the State is entitled to the benefit of every reasonable inference which may be fairly deduced from the evidence. See *S. v. Davenport,* 227 N. C., 475, 42 S. E. (2d), 686, and cases there cited.

Applying this rule to the present case, there is evidence tending to show, or from which reasonable inferences may be drawn as tending to show every essential element which enters into the crime of embezzlement, as required by the provisions of the statute. G. S., 14-90. There is evidence tending to show that in the transaction in question based upon valuable consideration defendant became the agent of Woodrow Price (1) to obtain money from National Trading Company of Hickory, N. C., on Price's account evidenced by his note, and (2) to pay the money to the National Investment Company of Baltimore for the purpose of having title to Price's automobile released. The evidence also tends to show that defendant obtained the money in cash from National Trading Company of Hickory, N. C., on papers executed or purporting to be executed by Price, and had the money in his possession. The evidence further tends to show that defendant misapplied the money, or converted it to his own use. Also there is sufficient evidence from which it may be inferred that the misapplication of the money by defendant, or the conversion of it to his own use was knowingly and willfully done with fraudulent intent.

Fraudulent intent which constitutes a necessary element of the crime of embezzlement, within the meaning of the statute, G. S., 14-90, is the intent of the agent to embezzle or otherwise willfully and corruptly use or misapply the property of the principal or employer for purposes other than those for which the property is held. *S. v. Howard,* 222 N. C., 291, 22 S. E. (2d), 917. See also *S. v. McDonald,* 133 N. C., 680, 45 S. E., 582; *S. v. Lancaster,* 202 N. C., 204, 162 S. E., 367; *S. v. McLean,* 209 N. C., 38, 182 S. E., 700.

Hence, the motions for judgment as of nonsuit were properly denied.

Defendant also bases other assignments of error upon general exceptions taken to the admission of the Exhibits A to F. The principal argument is that these exhibits are hearsay evidence. It appears, however, that the existence of such papers tended to corroborate the witness Woodrow Price, and were competent for that purpose. It will not be ground of exception that evidence competent for some purposes, but not for all, is admitted generally, unless the appellant asks, at the time of admission, that its purpose shall be restricted. Rule 21 of Rules of Practice in the Supreme Court, 221 N. C., 544. Here the record on the present appeal does not show that any such request was made by appellant. Hence, in the admission of the exhibits in evidence, no error is made to appear.

Regarding Exception No. 11. The argument here advanced is that the question and answer are incompetent for the reason that the witness could not know why his car had been repossessed and that he did not say what Baltimore company had repossessed the same. In the light of

the stipulation of record, p. 25, it would seem that the court below must have deemed the objection to the answer insufficient, and perhaps too late. *Hodges v. Wilson,* 165 N. C., 323, 81 S. E., 340. But, be that as it may, we fail to see harmful error. The witness had testified without objection that "The Baltimore company took the car." The National Investment Company of Baltimore is the only Baltimore company to which reference had been made. It was the only Baltimore company, so far as the evidence discloses, that had any claim against the car. The reasonable inference is that it was that company that repossessed the car and that it did so because there was default in the payment of the indebtedness to it. Moreover, the evidence that when Price emphatically challenged the veracity of defendant in stating that he had sent his personal check to the Baltimore company,—that he had never sent them anything, defendant did not say anything for a bit, did not remember what he sent, but did not deny it. These are circumstances tending to show an admission that he had not sent the money to pay the debt to National Investment Company. Compare *S. v. Hawkins,* 214 N. C., 326, 199 S. E., 284, and cases cited.

The assignments of error directed against the charge are not well taken. They relate to portions of the charge in which the court was recapitulating the evidence, and stating contentions, and the record does not show that the court's attention was called to any misstatement. Ordinarily, an error in stating the contentions of a party or in recapitulating the evidence should be called to the attention of the court in time to afford an opportunity of correction,—otherwise it may be regarded as waived or as a harmless inadvertence. See *S. v. McNair,* 226 N. C., 462, 38 S. E. (2d), 514, and cases cited.

All other assignments of error, after due consideration, have been found to be without merit.

Hence, in the judgment below, we find

No error.

ERVIN, J., took no part in the consideration or decision of this case.