### STATE *v.* FRANCIS THORP.

Upon a trial for murder, it is error to call on a witness to give his "best impression" concerning transactions of which he has no personal knowledge.

INDICTMENT for murder, tried before *Henry, J.,* at Fall Term, 1874, of GRANVILLE Superior Court.

The defendant Francis Thorp was charged with the murder of her child by throwing him into a river. On the [trial below, a witness on the part of the State, swore that he saw the defendant and one Peter Goodwin going in the direction of the river about three-quarters of a mile from the ford where the child was found dead; that he knew the prisoner well, he also knew the deceased. That on the evening when he saw defendant going to the river, she had a child in her arms; he was distant some one hundred yards, and was not sure that the child was the child of defendant. The jury returned a verdict of guilty. Rule for new trial, &c. Rule discharged.

Defendant appealed. The grounds of appeal are fully stated in the opinion of the Court.

*Attorney General Hargrove,* for the State.
*T. B. Venable,* for the prisoner.

READE, J. The prisoner was charged with drowning her child in a river. A witness saw her going towards the river with a child in her arms. The witness said he knew the prisoner and identified her, he knew the child also, but he was one hundred yards off and was not sure who the child in her arms was. He was then asked if he recognized the child as the deceased? Which question was objected to by the prisoner and ruled out by the Court: for what reason we cannot conceive, as it was clearly competent. Possibly it was ruled out as being a leading question. The Solicitor then asked, " Is it your best impression that the child she had in her arms, was her son Robert Thorp?" The witness said it was. This question was objected to but was admitted. If the former question was leading, this was more so, but there is a more substantial objection to it.

It is true that in very many cases a witness may give " his impressions" or his " opinions " as to facts. Indeed memory is so treacherous, knowledge so imperfect, and even the senses so deceptive, that we can seldom give to positive assertions

any other interpretation than that they are the impressions or opinions of the witness. Do you know when a certain act was done? I do. When was it? I think it was in January. Where was it? It was in Raleigh. At what place in Raleigh? I think it was at the hotel, it may have been at the capitol. Who did it? Mr. A. Was it not Mr. B? It was one or the other and my best impression is that it was Mr. A. All that would be proper, because the witness is speaking of facts within his knowledge and as he understands them. So if in this case the witness had been asked " Did you know the deceased child? Yes. Did you set it in the person's arms? Yes. Did you recognize it as the deceased? Yes, I think it was, that is my best impression. All that would have been proper. But we think the case presented to us will bear the interpretation that the witness said, "I saw the prisoner have a child in her arms. I was so far off that I could not tell what child it was, but I knew that she had a child of her own, and I suppose she would not have been carrying any other child than her own, therefore I think it was her own child. That is my best impression. And this was clearly improper. This was but his *inference* from what he saw and knew. And we suppose that any bystander in the Court who heard the trial might have been called up and he would have testified that his " best impression " was that it was her child, from the evidence. A witness must speak of facts within his knowledge. He knew that the prisoner had a child of her own, and he knew that she had a child in her arms, and these facts it was proper for him to state, but he could not go further and say, " from these facts which I know I infer that the child was her own, I am not sure but that is my best impression." This may not have been the sense in which he intended to be understood, but we think it will bear that construction. And in favor of life we so construe it. He certainly did not mean to say that he recognized the child as the child of the prisoner, and yet he knew her child very well. Why did he not recognize the child as he did the prisoner? Evidently because at that distance he could not

recognize one child from another in the arms of the prisoner. It was probably but little more distinct than a bundle and he just took it to be her child, because she had it in her arms. Probably this was all he meant by his "best impression." And it was error to allow it.

Undoubtedly counsel has the right to argue both the facts and the law to the jury in a criminal case, and to read authorities. And after he has done so, the prisoner has the farther right to have his Honor instruct the jury upon any disputed point. And we doubt whether it is sufficient for his Honor to have a book or a decided case read to the jury, and leave them to draw their own conclusions. The practice is new and not to be commended, but we need not decide it, and there is error upon the other point.

There is error.

PER CURIAM.                         *Venire de novo.*