### STATE v. HARDY SISK AND SANDY SISK.

(Filed 11 April, 1923.)

1. **Appeal and Error—Objections and Exceptions—Evidence—Questions and Answers.**

    Exceptions to the exclusion of questions asked witnesses on a trial will not be considered on appeal when it does not appear what the answers would have been.

2. **Evidence — Intoxicating Liquors — Spirituous Liquors — Homicide—Murder.**

    Upon the trial for murder of an officer while attempting to arrest the defendant for violating the prohibition law, testimony as to what the deceased had said before then about wishing that the defendant would sell his land and move away from the community is irrelevant, and properly excluded by the trial judge.

3. **Same—Reputation.**

    When the defendant is tried for the murder of an officer while arresting him for violating the prohibition law, testimony as to whether the witness had heard of the deceased holding up people and shooting at them for carrying whiskey in their automobiles is properly excluded as incompetent.

4. **Homicide — Murder— Coprincipals—Self-defense—Evidence—Instructions—Appeal and Error—Harmless Error.**

    When a father and his two sons are tried for murder as coprincipals, and the evidence tends to show that the sons had commenced the firing upon the deceased, an officer with warrants for their arrest, resulting in his being killed by the father in self-defense, the defense of the father is not available to the sons who had willfully commenced the firing resulting in the death; and an error in an instruction in favor of the sons upon this principle cannot be complained of by them. *S. v. Whitson,* 111 N. C., 695, cited and distinguished.

APPEAL by defendants from *Shaw, J.,* at January Term, 1923, of ROCKINGHAM.

The defendants and their father, Ed. Sisk, were tried upon an indictment for murder in the first degree. The father, Ed. Sisk, was found not guilty, but the two sons, Hardy and Sandy Sisk, were convicted of murder in the second degree.

On 14 April, 1922, the deceased, E. C. Zeigler, a deputy sheriff of Rockingham County and policeman at Madison, and W. T. Steele, who was a policeman from Mayodan, went out to the house of Ed. Sisk on a search for illicit whiskey, and policeman Steele had at the time two warrants for the arrest of Sandy Sisk. In the neighborhood of the Sisk house the officers, in their search for whiskey, separated. Steele testified that shortly after the separation he heard some one cursing, and Zeigler called, "Steele, come here"; the cursing was being done mostly by the defendant, Sandy Sisk; when he got up there Sandy was cursing and swearing that he would not be arrested; Sandy had a pistol in his right hand; his brother Hardy came around the house with a shotgun in one hand and a pistol in the other and told Steele not to come up there; Steele said that he said to them, "You boys had better put those guns down; you are not going to hurt anybody"; and when he went on three or four steps further the father, Ed. Sisk, walked up. He reached over and got the shotgun from Hardy and asked what the trouble was. The witness replied that he had a warrant for Sandy's arrest. Ed. Sisk asked him what it was for, and he read the warrants, and Sisk said, "Let him alone; he will come down some time and see about it." Steele replied that he must have Sandy or a bond for him, to which the father replied, "All right, I will sign the bond." But Hardy and Sandy both spoke up and said with an oath that they would not sign anything, and then the father said he would not sign. They kept on cursing and swearing that they would not be arrested, and were backing off from him and Zeigler, who had come up. Finally Steele said to the old man, "You will sign this bond," and squatted down on his knee to write it out. As he did so, he said he heard Zeigler say, "Hold up," or "Hands up," and the firing started right off. He saw Sandy shoot at Zeigler. The witness then grabbed his pistol and as he threw it up Ed. Sisk threw his shotgun up and Zeigler fell. Hardy was also shooting. Ed. Sisk, the old man, was 6 to 7 steps from Zeigler at the time the witness saw him fire his gun. The witness then commenced firing, and there was a good deal of it done, although he did not see Zeigler shoot any, nor have any pistol, that day. When the gun fired, Zeigler fell.

It was in evidence that previous to this occurrence both Hardy and Sandy Sisk had declared that they would not be arrested, but would fill any officer who came out there with a warrant for them with lead. The gun-shot wound by the father, Ed. Sisk, caused the death of Zeigler. The coroner also found in the groin of the deceased, Zeigler, a wound

caused by a pistol bullet, which probably punctured a blood vessel. It is also in evidence that pistol bullets had passed through the clothes of the deceased without making any fatal wound.

Upon the evidence, the State insists that the two Sisk boys commenced the firing upon Zeigler. When Ed. Sisk, the father, came up Sandy had in his hands not only the pistol, but a loaded shotgun. The father took the shotgun out of Hardy's hands. When Steele suggested to Ed. Sisk that he sign the bond for Sandy's appearance at court, Ed. Sisk consented, and Steele was kneeling down filling out the bond when the shooting commenced. There seems no doubt from the evidence that the wound in the head of the deceased from the shotgun in the hands of Ed. Sisk was the fatal shot. Ed. Sisk claimed that Zeigler had shot off the end of his nose before he used the shotgun, and was still firing at him, and he shot to protect his life. The jury seems to have taken that view of the evidence, for they acquitted Ed. Sisk upon the ground of self-defense, but convicted the two boys of murder in the second degree. From the judgment they appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*A. L. Brooks and Glidewell & Maybrick for defendants.*

CLARK, C. J. Upon the evidence of the State, the two Sisk boys were offering armed resistance to the arrest of Sandy Sisk upon a valid and legal warrant, and began shooting. In the promiscuous firing that ensued, Zeigler apparently was killed by the father, but the two boys were engaged in firing at the time.

The defendants excepted to the exclusion of the following questions: (1) "Did not Zeigler have the general reputation of being a violent man and shooting when he was off on a raid?" It does not appear what the answer would have been. (2) The defendants also excepted to the exclusion of the testimony of the witness Gunter, who said in reply to a question: "Mr. Sisk had a lot surveyed off the mill, and my understanding was he was going to sell it and Mr. Zeigler said he wished the damned rascal would sell it or die and leave." The court properly struck out this evidence as irrelevant. (3) The court refused to allow the witness Money to answer the following question: "You have heard of Zeigler holding up people and shooting at them for carrying whiskey in their automobiles." This was properly excluded as incompetent, and, besides, it does not appear what the answer would have been; and further, the witness was permitted to state that Zeigler did not have a general reputation to that effect. The motion in arrest of judgment was properly refused.

STATE *v.* SISK.

The court charged the jury: "In this case the State asks you to return a verdict of murder in the first degree, but I will instruct you that your verdict may be guilty of murder in the first degree; guilty of murder in the second degree; guilty, of manslaughter, or guilty of excusable or justifiable homicide, as you may find the facts to be from the testimony of the witnesses."

The defendants excepted to the following charge: "If you find that the defendant, Ed. Sisk, was not at fault himself, that he did not fight willingly, but reasonably apprehending it necessary to shoot and kill Zeigler in order to save his own life, or himself from some great bodily harm, he shot, he would not be guilty, and neither would the boys be guilty, although they may have been there aiding and abetting, or they may have been shooting at the time, they would not be guilty of manslaughter, although they may have been engaged in the shooting." If there was any error in this charge it was in favor of the defendants, and they cannot complain of it.

Finally the defendants excepted, because the court did not charge the jury that "If the jury should find that the defendant Ed. Sisk did the killing, as contended for by the State, and admitted by him, and that such killing was justifiable, and they should find him not guilty, that the other two defendants, Hardy and Sandy Sisk, would not be guilty of murder in the second degree, even though they may have aided and abetted their father in the killing." There was no prayer to this effect.

The indictment was not against Ed. Sisk for murder and against the sons for aiding and abetting, but the indictment was against all three for murder in the first degree. The killing of Zeigler occurred during the armed resistance of the two Sisk boys to the arrest of Sandy Sisk under a valid and legal warrant. The evidence for the State is that they opened fire on the officers, and in the promiscuous shooting that followed Zeigler was killed, apparently by Ed. Sisk. It is not a case of homicide by Sisk, the boys aiding and abetting him, as in *S. v. Whitson,* 111 N. C., 695, but they were all engaged, upon the evidence, in the shooting, and if there was error in the charge of the judge in favor of Ed. Sisk, or of the jury in finding him not guilty upon the idea that so far as he was concerned he was acting in self-defense, or in defense of his boys, this cannot inure to the benefit of the defendants, who were principals in the affair if they were resisting with weapons the service of the warrant, and began the shooting.

The idea of the jury evidently was that the father had entered the fight in protection of himself only after he had been shot in the nose, and was not guilty. This was no defense to the two defendants if they started the difficulty, and began the firing upon the officers, which resulted in the killing of Zeigler. If it is true that the father fired the

shot which killed the deceased, but the other defendants began the firing and were engaged in carrying it on, they were not aiders and abetters, but were principals in the unlawful shooting in which the officer was killed, and the father doubtless was found not guilty because the jury found that he acted in self-defense.

The indictment was against the father and the two boys as coprincipals. If the defendants originated the firing in which Zeigler was killed, and the boys were in armed resistance to the service of legal process, they were responsible for the homicide of the officer. So far as they are concerned, it is no defense that the officer was killed by their father whom the jury, whether rightly or wrongly, acquitted of any responsibility, presumably upon the ground that the old man's part in the fight was taken in self-defense. The verdict as to him cannot be considered by us, and it "cannot be imputed to the defendants for righteousness." If Zeigler was killed by a shot fired in armed resistance to the officers of the law, begun and carried on by these defendants, they certainly were not acting in self-defense.

The court in its charge recapitulated very fully and carefully the evidence and contentions of both sides, and charged the law applicable. He called attention to the evidence and the contention of the defendants that Zeigler was a man of dangerous and violent disposition; that he had made threats against the defendants, and that he began the shooting on this occasion. He also recited the evidence and the contentions of the State that Zeigler was not a man of dangerous and violent character, and that he was unarmed on this occasion, and that the shooting began upon the part of the defendants. Ed. Sisk went upon the stand on his own behalf, but the judge charged the jury that they could not consider the fact that Hardy and Sandy Sisk did not go upon the stand to their prejudice; that they had a right not to do so. The charge was very full and complete, and seems to have presented the case to the jury in every aspect of the evidence and all the contentions of the respective sides. The sole exceptions are those above stated.

No error.