## STATE v. JOHN BAKER.

(Filed 16 December, 1942.)

**1. Assault and Battery § 12a: Homicide § 11—**

Where a person's home has been violently invaded, under such circumstances as to make it appear that a warning or order to desist would be ineffective to stop an apparently murderous assault, the law does not require a challenge to the assailant before taking adequate measures for defense.

**2. Homicide § 25: Criminal Law §§ 52b, 52c—**

In a prosecution for murder, the evidence for the State showing that deceased was attempting to force his way into the house of his brother,

with whom he was not on good terms, was cursing and violently threatening his brother. had broken the back window through which he had projected his head and shoulders, when his brother, the defendant, standing about ten feet inside the house, shot and killed deceased, with no warning whatever, *held* defendant's motion for judgment of nonsuit or for a directed verdict was properly denied.

### 3. Homicide § 27b—

In a trial for murder, where defendant pleaded not guilty and did not go upon the stand, but his counsel admitted "that deceased died as a result of a gunshot wound inflicted by defendant," it was error for the court to charge the jury that, upon such admission, the law raises two presumptions, first that the killing was unlawful, and second that it was done with malice, and places the burden on the defendant to satisfy the jury that he was wholly justified on the ground of self-defense, or that there was no malice.

APPEAL by defendant from *Bone, J.,* at January Term, 1942, of CUMBERLAND.   New trial.

The defendant was indicted for the murder of Ezzelle Baker.   The jury returned verdict of guilty of manslaughter.

The evidence pertinent to the questions raised on the appeal may be concisely stated as follows: On 23 November, 1941, Ezzelle Baker, in company with Walter Hart, went to the home of his brother, John Baker, several miles from Hope Mills, to see his mother, who lived with John.   Ezzelle Baker and Hart, being unable to gain admittance, went away and came back again late in the afternoon, under the influence of liquor.   After knocking and calling and receiving no answer, Ezzelle attempted to force an entrance.   Finding the doors and windows barred and the shades down, he kicked the front door, cut the putty away from the front window frames, and then went to the back window, and, cursing and threatening, removed two panes of glass, cut out a part of the frame with a knife, and climbed up so as to get his head and shoulders in the room, declaring he was going to kill the defendant.   As he was attempting to effect entrance through the window, the defendant John Baker, standing in the door of an adjoining room, eight or ten feet away, shot him in the face and killed him.   It seems that the brothers had not been on good terms, and that John had with his mother moved to their present home to get away from Ezzelle, and had not seen him in two years.

The only evidence offered by the State as to the circumstances of the shooting came from Walter Hart, and police officer Butler, who in his testimony, related the defendant's statement of the facts of the occurrence.   The defendant did not testify.

At the close of the State's evidence it was stated by defendant's counsel that he was willing for the record to show "that the deceased died as a

result of a gunshot wound inflicted by the defendant John Baker." In his charge to the jury, the trial judge, referring to this statement of counsel, said: "Upon that admission the law raises two presumptions; first, that the killing was unlawful; and, second, that it was done with malice; and places upon the defendant the burden of satisfying the jury, not beyond a reasonable doubt nor even by the greater weight of the evidence, but simply to the satisfaction of the jury, either that he was wholly justified on the ground of self-defense, or that there was no malice." The defendant noted exception to this instruction.

The defendant's motion for judgment of nonsuit or for directed verdict was denied. The jury returned verdict of guilty of manslaughter, and from judgment imposing prison sentence, the defendant appealed.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*W. C. Downing and James R. Nance for defendant, appellant.*

DEVIN, J. It appears that in the development of the testimony, in the trial, the State put in evidence the defendant's narrative of the circumstances of the homicide, which tended to show that the fatal wound was inflicted by the defendant in the defense of himself and his home, against an attempt on the part of the deceased to enter by force with threats to kill. It was earnestly argued that this constituted a complete defense, and that this evidence having been offered by the State, without other showing, entitled the defendant to his motion for judgment of nonsuit or for a directed verdict in his favor. *S. v. Fulcher,* 184 N. C., 663, 113 S. E., 769; *S. v. Todd, ante,* 346.

However, an examination of the evidence set out in the record reveals that while the deceased was attempting to force an entrance into defendant's home, and had gone so far as to break the back window of the house and project his head and shoulders through the aperture at the time he was shot, the State's testimony does not show the defendant at any time ordered him to desist, or gave him any warning of his purpose to shoot if he persisted. The shades of the room were down and the presence of the defendant and his gun apparently were not clearly observable. No word was spoken by the defendant, and, when the head of the intruder appeared through the window, he shot. It is true, where a person's home has been violently invaded under such circumstances as to make it appear that a warning or order to desist would be ineffective to stop an apparently murderous assault, the law would not require a challenge to the assailant as a prerequisite to taking adequate measures for defense. In the expressive language of *Chief Justice Pearson,* "One cannot be expected to encounter a lion as he would a lamb." *S. v. Floyd,*

51 N. C., 392; *S. v. Hough,* 138 N. C., 663, 50 S. E., 709. But we think under all the circumstances of this case, whether the defendant used more force than appeared reasonably necessary for the protection of himself or his home was a question for the jury, and that the motion for judgment of nonsuit was properly denied. *S. v. Goode,* 130 N. C., 651, 41 S. E., 3; *S. v. Cox,* 153 N. C., 638, 69 S. E., 419; *S. v. Robinson,* 188 N. C., 784, 125 S. E., 617; *S. v. Glenn,* 198 N. C., 79, 150 S. E., 663; *S. v. Bryson,* 200 N. C., 50, 156 S. E., 143; *S. v. Roddey,* 219 N. C., 532, 14 S. E. (2d), 526.

But we think the learned judge who presided over the trial of this case fell into error in his interpretation of the extent and effect of the admission of counsel. We do not think this was alone sufficient to relieve the State of the burden of showing beyond a reasonable doubt that the defendant intentionally killed the deceased with a deadly weapon, or to require the defendant to assume the burden of satisfying the jury that he was justified on the ground of self-defense. The defendant had pleaded not guilty. He had not gone upon the stand nor made any admission other than the statement of counsel. This statement should not be given an interpretation beyond the necessary implication of the words used. The portion of the charge excepted to properly could be predicated only on a definite admission, or the finding by the requisite degree of proof, that the defendant intentionally slew the deceased with a deadly weapon, thus making out a *prima facie* case of murder in the second degree. *S. v. Beachum,* 220 N. C., 531, 17 S. E. (2d), 674; *S. v. Howell,* 218 N. C., 280, 10 S. E. (2d), 815; *S. v. Quick,* 150 N. C., 820, 64 S. E., 168.

We think the instruction complained of tended to relieve the State of the burden of proof which was placed upon it by the defendant's plea of not guilty, and that a new trial should be awarded.

New trial.