STATE v. ED HARVEY.

(Filed 15 October, 1947.) ·

**1. Criminal Law § 28—**

Where defendant pleads not guilty, he enters upon the trial with the common law presumption of innocence in his favor, and the burden is on the State to establish his guilt beyond a reasonable doubt.

**2. Criminal Law §§ 32a, 52a—**

Circumstantial evidence is a recognized and accepted instrumentality in the ascertainment of truth, but in order to justify conviction the facts relied on must be of such a nature and so connected or related as to point unerringly to the defendant's guilt and exclude any other reasonable hypothesis.

**3. Same: Homicide § 25—Circumstantial evidence in this case held insufficient to be submitted to the jury.**

Evidence tending only to show motive or ill will between defendant and deceased, with testimony of the sole eyewitness that the man who shot and inflicted the mortal wound was of the same size and height of defendant but that he was standing in the dark some distance away and that the witness would not identify him, together with testimony that the rifle of defendant's brother-in-law disappeared but with testimony of the driver who took defendant to the house of his brother-in-law that when defendant came out he could not have had a rifle under his overcoat, without evidence as to the size of the death bullet although the bullet itself was in evidence, *is held* insufficient to be submitted to the jury, since the circumstances, though consistent with guilt, do not exclude defendant's innocence as a reasonable assumption, and defendant's demurrer to the evidence is sustained in the Supreme Court. G. S., 15-173.

APPEAL by defendant from *Edmundson, Special Judge,* at June Term, 1947, of CRAVEN.

Criminal prosecution on indictment charging the defendant with the murder of one Nathaniel (Eddie) Roberts.

The record discloses that on Saturday evening, 26 April, 1947, about 8 :00 p.m., the Chief of Police of New Bern was called to the home of Nathaniel (Eddie) Roberts and there found him dead on the floor in the kitchen of his house with a bullet wound in the back of his head, just behind the ear.

Owen Dove, who was at the home of his son next door to where the deceased lived, testified that he saw a man come up the 10-or-15-foot alley

between the two houses, poke a rifle through the porch slats and fire into the Roberts kitchen. "It was dark," but the man "looked to be about the same size and height" of the defendant. The witness had seen the defendant that afternoon and had observed him in the street as he threw a bottle at the wife of the deceased. "I couldn't tell what kind of clothes he had on. . . . The rifle sounded like a .22 . . . In my opinion, it was a .22 . . . I had a chance to see the man, but I couldn't tell who he was." The witness further said that after the shooting, the man he saw with the rifle climbed "over the fence and crossed Broad Street. He was about the same size and height of the man I saw fire the shot and about the same size of the man I saw that afternoon throw the bottle. (Cross-examination) I am not willing to identify any man that I couldn't see his face. There are hundreds of people in town who are the same height and I have seen a lot of people in this town who are the same size."

An investigation by the officers revealed that the defendant was at the home of the deceased, around two o'clock on the day of the shooting, playing cards and gambling for small stakes. He was drinking, and an altercation ensued between him and the wife of the deceased. As he left the house, he threatened to "get his gun and shoot both of us" (the wife of the deceased and David Green). Later that afternoon the defendant and the deceased met at George Downey's Cafe, and some words were passed. It seems the deceased slapped the defendant. They both left the cafe.

Shortly thereafter, the defendant got Elon Hill to take him to where he lived with his brother just over the Jones County line. The defendant went into the house, changed his clothes, and came out in about 25 minutes with an overcoat over his arm. Hill then drove the defendant back to New Bern, arriving there around sundown. Hill says, "He couldn't have had a rifle under that overcoat when I saw it."

The wife of the deceased again saw the defendant in a cafe, near the scene of the shooting, about 9:30 that evening. The defendant was arrested on the following Tuesday. He admitted to the officers that he was in New Bern on the afternoon and night of the shooting. Further than this, he was somewhat equivocal about his movements, but finally said he had lost some money gambling at the home of the deceased and that he had some trouble there. He never admitted going to his brother's home and getting his overcoat in the afternoon. "He always said he went back home at 10:00 o'clock on the bus."

The defendant's sister-in-law, in whose home he lived, testified that a .22 rifle, which her husband had borrowed to kill some hogs mysteriously disappeared about that time, *i.e.,* "when her husband left" to go to Baxter Springs.

The death bullet was identified and offered in evidence, albeit the record is silent as to its size. The death gun was never found.

At the conclusion of the State's evidence—none was offered by the defendant—the solicitor announced that he would not ask for a verdict on the capital charge as the deceased and the defendant had been quarreling on the day in question, but would seek a verdict of murder in the second degree, or manslaughter, as the jury should determine the facts from the evidence.

Verdict: Guilty of manslaughter.

Judgment: Imprisonment in the State's Prison for not less than 15 nor more than 20 years.

The defendant appeals, assigning as error the failure of the court to sustain his demurrer to the evidence and dismiss the action as in case of nonsuit.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Charles L. Abernethy, Jr., for defendant.*

STACY, C. J. The question for decision is whether the evidence suffices to overcome the demurrer and to carry the case to the jury. The trial court answered in the affirmative. We are inclined to a different view.

True it is, the evidence seems to point an accusing finger at the defendant as the perpetrator of the crime, and to excite suspicion, somewhat strongly perhaps, of his guilt, but it apparently leaves too much to surmise or assumption to support a conviction. *S. v. Warren, ante,* 22; *S. v. Oxendine,* 223 N. C., 659, 27 S. E. (2d), 814, and cases cited.

The defendant entered upon the trial with the common-law presumption of innocence in his favor and with the burden on the State to establish his guilt beyond a reasonable doubt. *S. v. Singleton,* 183 N. C., 738, 110 S. E., 846. In other words, the jury was required to be "fully satisfied," "entirely convinced," or "satisfied to a moral certainty," of the defendant's guilt before a verdict could be rendered against him. *S. v. Harris,* 223 N. C., 697, 28 S. E. (2d), 232. The defendant's plea of traverse put in issue the question of his guilt.

The State relies upon circumstantial evidence, which is a recognized and accepted instrumentality in the ascertainment of truth; and, in many instances, quite essential to its establishment. *S. v. Coffey,* 210 N. C., 561, 187 S. E., 754. In such case, however, the defendant being charged with a felony, the rule is, that the facts established or adduced on the hearing must be of such a nature and so connected or related as to point unerringly to the defendant's guilt and exclude any other reasonable

hypothesis. *S. v. Stiwinter,* 211 N. C., 278, 189 S. E., 868; *S. v. Matthews,* 66 N. C., 106.

The record discloses a capital crime of murder, certainly one in the second degree. Yet the jury returned a verdict of manslaughter. Conceding the power of the jury to pardon of the graver offense and to convict of a lesser one, even in the absence of evidence to support the milder verdict, which affords the defendant no cause for complaint as it is favorable to him, *S. v. Bentley,* 223 N. C., 563, 27 S. E. (2d), 738, nevertheless, the mildness of the verdict, in the light of the record, would seem to indicate some hesitancy on the part of the jury to assess the defendant with the homicide. *S. v. Sisk,* 185 N. C., 696, 116 S. E., 721.

The only witness who saw the perpetrator of the crime, and that in the dark and at some distance away, was not familiar with his carriage or manner of walk, and declined to identify the defendant as the man he saw. All he would say was that he "looked to be about the same size and height." *S. v. Thorp,* 72 N. C., 186. The guilt of an accused is not to be inferred merely from facts consistent with his guilt, but they must be inconsistent with his innocence. *S. v. Massey,* 86 N. C., 658. "Evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict and should not be left to the jury." *S. v. Vinson,* 63 N. C., 335. See, also, *S. v. Battle,* 198 N. C., 379, 151 S. E., 927; *S. v. Swinson,* 196 N. C., 100, 144 S. E., 555; *S. v. Montague,* 195 N. C., 20, 141 S. E., 285; *S. v. Prince,* 182 N. C., 788, 108 S. E., 330; *S. v. Gragg,* 122 N. C., 1082, 30 S. E., 306; *S. v. Rhodes,* 111 N. C., 647, 15 S. E., 1038; *S. v. Goodson,* 107 N. C., 798, 12 S. E., 329; *S. v. Brackville,* 106 N. C., 701, 11 S. E., 284; *S. v. Powell,* 94 N. C., 965; and *Wiltkowsky v. Wasson,* 71 N. C., 451.

The theory of the State is, that the defendant left the home of the deceased in the afternoon of the day in question, went to his brother's house in Jones County and secured a .22 rifle, as he threatened to do, returned to New Bern about sundown and shortly thereafter committed the homicide. The defect in this theory is, that the witness Hill who drove the defendant into Jones County, says he did not bring a rifle back with him. Then, too, the record is silent as to the size of the death bullet, although the bullet itself was in evidence.

It all comes to this: The evidence for the prosecution is inconclusive. It is not compelling. Taking it to be true, and entirely so, it still leaves the identity of the accused as the perpetrator of the crime in doubt, and fails to exclude his innocence as a reasonable assumption. *S. v. Miller,* 220 N. C., 660, 18 S. E. (2d), 145; *S. v. Matthews, supra.* It would require a repudiation of Hill's testimony and a guess to bridge the hiatus in the State's case. *S. v. Johnson,* 199 N. C., 429, 154 S. E., 750.

The defendant's demurrer to the evidence will be sustained here. G. S., 15-173.

Reversed.