61 S.E.2d 349 (1950)
232 N.C. 447
STATE
v.
HENDRICK.
No. 145.
Supreme Court of North Carolina.
October 11, 1950.
*353 Harry McMullan, Atty. Gen., Hughes J. Rhodes, Asst. Atty. Gen., for the State.
Carl E. Gaddy, Jr., Ray B. Brady, Raleigh, for defendant appellant.
WINBORNE, Justice.
While the record on this appeal presents numerous assignments of error based on exceptions to the admission of evidence, the one based upon the denial of defendant's motion for judgment as of nonsuit under G.S. § 15-173 is considered determinative *354 of the appeal. Hence, others will not be considered and treated.
A murder which is perpetrated by means of poison is deemed to be murder in the first degree. G.S. § 14-17. And when the State undertakes to prosecute for such a murder, it has the burden of producing sufficient evidence to prove beyond a reasonable doubt (1) that the deceased died by virtue of a criminal act, and (2) that such criminal act was committed by the accused. State v. Palmer, 230 N.C. 205, 52 S.E.2d 908, and cases cited. In other words, the State, in such case, and in this case, has the burden of producing sufficient evidence to prove beyond a reasonable doubt that the deceased died from poison, administered with criminal intent by the person charged.
When the sufficiency of the evidence offered on the trial in Superior Court is challenged by motion for judgment as of nonsuit under G.S. § 15-173, the evidence is to be taken in the light most favorable to the State.
Applying this rule to the evidence in the case in hand, it may be conceded that there is sufficient competent evidence to show, and from which the jury may find beyond a reasonable doubt that the deceased died of arsenic poisoning. But a careful consideration of the evidence in the record of case on appeal, narrated above, taken in the light most favorable to the State, leads to the conclusion as a matter of law that it is insufficient to support a finding beyond a reasonable doubt that the deceased died from criminal act, or that the poison was administered by defendant with criminal intent, or to support a verdict against her on the charge contained in the bill of indictment. The evidence offered is conjectural and speculative. All that is shown may be true, and the defendant be innocent of the crime. Hence the motions of defendant for judgment as of nonsuit should have been sustained. State v. Coffey, 228 N.C. 119, 44 S.E.2d 886. Nevertheless, consideration of the various contentions of the State follows:
In passing upon the legal sufficiency of the evidence, when the State relies upon circumstantial evidence for a conviction of a felony, as in the present case, "the rule is, that the facts established or adduced on the hearing must be of such a nature and so connected or related as to point unerringly to the defendants' guilt and exclude any other reasonable hypothesis". State v. Stiwinter, 211 N.C. 278, 189 S.E. 868; State v. Harvey, 228 N.C. 62, 44 S.E.2d 472, 474; State v. Coffey, supra; State v. Minton, 228 N.C. 518, 46 S.E.2d 296; State v. Frye, 229 N.C. 581, 50 S.E.2d 895; State v. Fulk, 232 N.C. 118, 59 S.E.2d 617.
The State contends that defendant had two motives for killing her husband: (1) To obtain the proceeds of two policies of insurance on his life in which she was named beneficiary, and (2) to be free to marry one Hendrick.
"Evidence of motive is relevant as a circumstance to identify an accused as the perpetrator of an offense * * *. But such evidence, standing alone, is not sufficient to carry a case to the jury, or to sustain a conviction", Ervin, J., in State v. Palmer, supra, [230 N.C. 205, 52 S.E.2d 908, 913].
As to the first alleged motive: The State points to the testimony tending to show her early solicitude as to the insurance after the death of her husband. This, however, is in entire harmony with her innocence. The evidence tends to show that there was some uncertainty as to whether the premium was paid. Indeed, the brothers of deceased manifested some interest, even to the extent of going with her to see the insurance agent in Henderson, N. C., and of one of them paying a premium that did not become due until two days after the death of the insured. Moreover, the evidence shows that defendant selected the casket for her husband. And it is entirely reasonable that her interest in the insurance was a natural concern about funeral expenses.
And as to the second: While the record shows the testimony of the witness J. S. Wrenn, of Emporia, Virginia, that he performed a marriage ceremony between one Joe Hendrick and Carol Williams Green on March 31, 1950, the record is void of any evidence that the Carol Williams Green who participated in that marriage ceremony is *355 the defendant, who is referred to in the evidence as Carrie Green or Carrie Lee Green.
The State also contends that defendant only had an opportunity to administer the poison to her husband. Evidence of opportunity standing alone will not justify a finding that the act was done by defendant. It is only a circumstance to be considered along with other evidence in the case. Stansbury on North Carolina Law of Evidence, Sec. 84, page 157. State v. Woodell, 211 N.C. 635, 191 S.E. 334. See also State v. Jones, 215 N.C. 660, 2 S.E.2d 867; and State v. Coffey, supra.
Also it is contended by the State that the silence and conduct of defendant when her husband stated to her "You are the cause of my suffering like this", and later repeated, constitute an admission by adoption that she administered the poison from which he later died. In this connection the record discloses that the clause quoted is a part of a statement attributed to the husband on Wednesday morning after his brother arrived; but the record fails to show what his wife said or did at the time. The second statement, the record discloses, was made Friday night three or three and a half hours prior to the time of the husband's death at 3:15 Saturday morning. It must, therefore, have been near midnight. At that time the testimony is that the husband "said in her presence he did not want her to do anything else because she was the reason he was suffering in that shape", and that "when he said that his wife did not say anything, just turned around and went down stairs". All this testimony was received in evidence without objection, and may be considered as a circumstance for what it is worth. State v. Hawkins, 214 N.C. 326, 199 S.E. 284. Nevertheless, under decisions of this Court, it may be fairly doubted that the attending circumstances were such as to call for a denial by her if what her husband said were not true. State v. Jackson, 150 N.C. 831, 64 S.E. 376; State v. Wilson, 205 N.C. 376, 171 S.E. 338; State v. Hawkins, supra; State v. Gentry, 228 N.C. 643, 46 S.E.2d 863; State v. Rich, 231 N.C. 696, 58 S.E.2d 717.
In State v. Wilson, supra, it is said: "When a statement is made, either to a person or within his hearing, implicating him in the commission of a crime, to which he makes no reply, the natural inference is that the implication is perhaps well founded, or he would have repelled it. State v. Suggs, 89 N.C. 527. But the occasion must be such as to call for a reply. 'It is not sufficient that the statement was made in the presence of the defendant against whom it is sought to be used, even though he remain silent; but it is further necessary that the circumstances should have been such as to call for a denial on his part, and to afford him an opportunity to make it.' 16 C.J., 659.
"Silence alone, in the face or hearing of an accusation, is not what makes it evidence of probative value, but the occasion, colored by the conduct of the accused or some circumstance in connection with the charge, is what gives the statement evidentiary weight. State v. Burton, 94 N.C. 947; State v. Bowman, 80 N.C. 432." [205 N.C. 376, 171 S.E. 338, 339.]
"The general rule is that statements made to or in the presence and hearing of a person, accusing him of the commission of or complicity in a crime, are, when not denied, admissible in evidence against him as warranting in inference of the truth of such statements." State v. Hawkins, supra, [214 N.C. 326, 199 S.E. 284, 287].
The cases of State v. Spencer, 176 N.C. 709, 97 S.E. 155; State v. Walton, 172 N.C. 931, 90 S.E. 518, and Reid v. Barnhart, 54 N.C. 142, cited and relied upon by the Attorney General, are not in conflict with the above.
In the light of these principles, it is noted that in the case in hand, there had been no suggestion that the husband was suffering from poison,rather he had been told on Thursday by his physician that he had "a bad stomach". And on Friday he had gone to South Hill, Va., to see a man there "he thought would do him some good if he had a bad stomach". Moreover, the record fails to show any intimation that at that time defendant was charged with any criminal act.
The State contends that the element of the offense, criminal administration *356 of poison, is borne out by the statement made by defendant to the sheriff, which in the brief of the Attorney General is characterized as "defendant's confession" and that she "poured a teaspoon of it in his soup". This contention overlooks two salient factors: In the first place, there is no evidence that poison was in the bottle. While the evidence shows that medicine bottles, one of which was marked `Poison' were found in the yard, where defendant says she threw "all the medicine in bottes", there is no evidence that any of these bottles contained poison, or showed any trace of poison.
In the second place, the State offered in evidence the statement of defendant to the sheriff, and thereby presents it as worthy of belief. State v. Todd, 222 N.C. 346, 23 S.E.2d 47. See also State v. Fulcher, 184 N.C. 663, 113 S.E. 769; State v. Cohoon, 206 N.C. 388, 174 S.E. 91; State v. Baker, 222 N.C. 428, 23 S.E. 2d 340; State v. Boyd, 223 N.C. 79, 25 S.E. 2d 456; State v. Watts, 224 N.C. 771, 32 S.E.2d 348; State v. Coffey, supra; State v. Robinson, 229 N.C. 647, 50 S.E.2d 740, 741.
And the statement exculpates defendant of any knowledge that the bottle from which she poured a teaspoon of its contents into the soup of her husband contained poison. Her statement is that her husband obtained the bottle, and she did not know what it contained. In State v. Robinson, supra, Barnhill, J., writing for the Court, said: "When the State offers evidence which tends to exculpate the defendant, he is entitled to whatever advantage the testimony affords and so, when it is wholly exculpatory, he is entitled to his acquittal."
This principle, however, does not preclude the State from showing that the facts were different. State v. Todd, supra; State v. Fulcher, supra; State v. Cohoon, supra; State v. Baker, supra; State v. Boyd, supra; State v. Watts, supra; State v. Coffey, supra; State v. Robinson, supra. But in the present case the State has failed to show the facts to be different.
The portion of the dialogue between the sheriff and defendant attributed to defendant "If I had put it in mine I would have been where he is", in retrospect, is entirely consistent with innocence. Poison had been found in the internal organs of her husband, and it is reasonabe that she may have presumed that the bottle he had obtained contained poison.
Furthermore, what defendant said in response to the suggestion of the sheriff that she had told enough to convict her,when considered with her entire statement to the sheriff, is far from an admission that she was guilty of the criminal administration of poison to her husband.
At most it may be said that the evidence shown in the record may point a finger of suspicion against defendant. Yet it lacks sufficient probative value to support the verdict against her. It is entirely consistent with her innocence. "It is better that ten guilty persons escape than that one innocent suffer."
Hence, judgment from which this appeal is taken, is
Reversed.