STATE v. MARVIN FRANK SMITH AND BUSTER PEYTON.

(Filed 6 January, 1953.)

1. **Criminal Law § 52a (3)—**

Circumstantial evidence is sufficient to support a conviction only when the circumstances shown are sufficient to exclude every reasonable hypothesis except that of guilt.

2. **Same: Gaming § 9—Circumstantial evidence of defendant's guilt of conspiracy or participation in lottery held insufficient.**

The only evidence tending to connect appealing defendant with the sale of lottery tickets was the circumstance that defendant, at an early hour of the morning, stopped his car at a point on a public road, alighted, walked directly to the place where officers had put "decoy tickets" beside a certain telephone pole in accordance with the custom of the "pick-up" man, and was apprehended as he was bending over. *Held:* While the evidence creates a strong suspicion of defendant's guilt it does not exclude the hypothesis that defendant's stopping and alighting at the place in question was to perform some innocent mission, and defendant's motion to nonsuit is allowed in the Supreme Court. G.S. 15-173.

APPEAL by defendant, Marvin Frank Smith, from *Patton, Special Judge,* and a jury, at May Term, 1952, of GUILFORD.

Criminal prosecution for conspiracy to violate lottery statutes and violation of lottery statutes.

For ease of narration, the appellant Marvin Frank Smith and his co-defendant Buster Peyton are called by their respective surnames.

Smith and Peyton were arraigned on a three-count indictment, and entered pleas of not guilty. The first count charged that they conspired with "divers other persons" to violate G.S. 14-290 and G.S. 14-291.1 by operating a lottery and selling lottery tickets; the second count charged

that they actually operated a lottery in violation of G.S. 14-290; and the third count charged that they actually sold lottery tickets in violation of G.S. 14-291.1.

The State called Luther Jarrell, Eugene Wattlington, and two police officers of the City of Greensboro to the stand as witnesses for the prosecution. Their testimony revealed these facts:

1. Jarrell and Wattlington participated in the operation of a "butter and egg lottery" in the City of Greensboro in the capacity of "pick-up" men.

2. Jarrell was hired by Peyton to assist in carrying on the lottery. Neither Jarrell nor Wattlington ever saw Smith, or ever had any personal contacts of any kind with him.

3. "In the operation of a butter and egg lottery, the 'pick-up' man goes to a certain place and picks up the tickets, and takes them to another place for somebody else to pick up."

4. Under the plan of operation, Jarrell picked up paper bags of lottery tickets at a church on the McConnell Road and carried them in his automobile to the intersection of Cedar Street and the Freeman Mill Road, where he deposited them beside certain telephone poles; and Wattlington picked up the paper bags of lottery tickets left by Jarrell at the intersection of Cedar Street and the Freeman Mill Road and transported them in his automobile to a point on the road leading from the High Point Road to Sedgefield, where he laid them down behind a road sign and a sapling.

5. Police officers of the City of Greensboro arrested both Jarrell and Wattlington on the night of 14 December, 1950, while they were attempting to perform their respective tasks.

6. Subsequent to these arrests, to wit, at 1:00 o'clock a.m. on 15 December, 1950, police officers of the City of Greensboro caused Wattlington to place a paper bag containing "decoy tickets," behind the road sign and the sapling beside the road leading from the High Point Road to Sedgefield, and stationed themselves in the darkness nearby.

7. Some thirty minutes later, Smith "drove up" alone in a Buick automobile, and "stopped . . . about even with the sign and sapling." He alighted, "walked . . . directly in front of the sign and sapling," and "started bending over . . . (or) leaning over . . . (or) reaching . . . over . . . towards the ground there." The police officers thereupon "caught hold of" Smith and placed him under arrest. Smith did not touch the bag of "decoy" tickets.

Smith offered nine witnesses who deposed to his good character. Neither he nor Peyton introduced any other evidence.

Both Smith and Peyton were convicted by the jury and sentenced by the judge on each of the three counts contained in the indictment.

Peyton abided by the judgment, but Smith excepted and appealed, assigning errors.

*Attorney-General McMullan, Assistant Attorney-General Bruton, and Charles G. Powell, Jr., Member of Staff, for the State.*
*H. L. Koontz for defendant, Marvin Frank Smith, appellant.*

ERVIN, J. The chief question presented by the assignments of error is whether the trial judge erred in overruling the motion of the appellant for a compulsory nonsuit.

There was no direct evidence at the trial tending to connect Smith with the crimes alleged. The State undertook to establish complicity on his part by these circumstances:

· Wattlington, a participant in the crimes alleged, was accustomed to put paper bags containing lottery tickets behind a road sign and a sapling standing beside a public road in a rural district. At an early hour of the morning, Smith stopped his automobile at a point on the public road "about even with the sign and sapling," alighted, "walked directly in front of the sign and sapling," and started bending over, or leaning over, or reaching over towards the ground there." Smith was thereupon placed under arrest.

Circumstantial evidence will support a conviction when, and only when, the circumstances are sufficient to exclude every reasonable hypothesis except that of guilt. To meet this requirement, the circumstantial facts must be consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent. *S. v. Needham,* 235 N.C. 555, 71 S.E. 2d 29; *S. v. Jarrell,* 233 N.C. 741, 65 S.E. 2d 304; *S. v. Webb,* 233 N.C. 382, 64 S.E. 2d 268; *S. v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349; *S. v. Minton,* 228 N.C. 518, 46 S.E. 2d 296; *S. v. Coffey,* 228 N.C. 119, 44 S.E. 2d 886; *S. v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472; *S. v. Graham,* 224 N.C. 347, 30 S. E. 2d 151; *S. v. Penry,* 220 N.C. 248, 17 S.E. 2d 4; *S. v. Jones,* 215 N.C. 660, 2 S.E. 2d 867; *S. v. English,* 214 N.C. 564, 199 S.E. 920; *S. v. Madden,* 212 N.C. 56, 192 S.E. 859; *S. v. Prince,* 182 N.C. 788, 108 S.E. 330; *S. v. Plyler,* 153 N.C. 630, 69 S.E. 269; *S. v. West,* 152 N.C. 832, 68 S.E. 14; *S. v. Wilcox,* 132 N.C. 1120, 44 S.E. 625; *S. v. Austin,* 129 N.C. 534, 40 S.E. 4; 23 C.J.S., Criminal Law, section 907.

The circumstantial facts put in evidence by the State are calculated to create a strong suspicion that the appellant visited the spot marked by the road sign and the sapling for the illegal purpose of securing lottery tickets. Yet they can certainly be reconciled with the theory that the appellant stopped his automobile on a public road and alighted from it to perform some innocent mission, and that his ensuing proximity to the

road sign and the sapling was wholly fortuitous in character. This being true, the circumstances are legally insufficient to exclude every reasonable hypothesis except that of the appellant's guilt, and the prosecution ought to have been dismissed as to him upon an involuntary nonsuit.

The circumstantial facts in the instant action bear a striking similarity to those in *S. v. Wilkerson,* 72 N.C. 376, where the defendant was indicted for stealing a hog. It was shown there that a hog belonging to the prosecutor had been killed and hidden under leaves in the corner of a fence, and that the defendant went to the place of concealment at night, looked around carefully as if looking for someone, stooped over the hog as if to take it up, and fled the scene on being hailed by the prosecutor, who had learned of the slaying and concealment of his hog and had stationed himself on watch nearby.

The Court held these circumstances insufficient to establish the guilt of the defendant.

For the reasons given, we vacate the conviction and sentence of the appellant, and sustain his motion for a compulsory nonsuit. Under the statute, this ruling is tantamount to a verdict of not guilty. G.S. 15-173.

This ruling may permit a violator of the law to go unwhipped of justice. If so, it does no violence to the basic concept of criminal justice epitomized in Sir William Blackstone's terse assertion that "it is better that ten guilty persons escape than that one innocent suffer." *S. v. Hendrick, supra.*

Reversed.