## STATE v. ODESSA WILLIAMS SIMMONS.

(Filed 20 October, 1954.)

**1. Criminal Law § 52a (1)—**

Upon motion to nonsuit under G.S. 15-173, the evidence is to be taken in the light most favorable to the State.

**2. Criminal Law §§ 42f, 52a (2)—**

When the State introduces testimony of an exculpatory statement made by defendant it presents such statement as worthy of belief, and while the State is not precluded from showing the facts to be otherwise, defendant is entitled to whatever advantage the statement affords, even to an acquittal when the statement is wholly exculpatory and there is no evidence tending to show the facts to be otherwise.

**3. Criminal Law § 52a (3)—**

In order for circumstantial evidence to be sufficient to be submitted to the jury, the facts and circumstances adduced by the evidence must be of such nature and so connected or related as to point unerringly to defendant's guilt and exclude any other reasonable hypothesis.

**4. Criminal Law § 51—**

While the probative weight of legal proof is for the jury, the sufficiency of proof in law is for the court.

**5. Criminal Law § 52a (2)—**

In order to be sufficient to be submitted to the jury, the State's evidence must tend to prove the fact at issue as a fairly logical and legitimate conclusion, and evidence which merely raises a suspicion or conjecture is insufficient to withstand motion to nonsuit.

**6. Automobiles § 29b—Evidence held insufficient to be submitted to the jury in this prosecution for reckless driving.**

The evidence disclosed that an automobile driven by defendant left the highway and traveled some 514 feet before coming to a stop after striking

the kitchen of a house, leaving skid marks on the highway and ground and causing damage to the house and car. The State introduced testimony of statements by defendant that as she approached the cross-roads at the scene, the lights of a car parked on the opposite side of the cross-roads were switched on, that she was blinded by these lights, and, in an effort to avoid striking the car head-on, turned off the highway into a dirt driveway or pathway leading to the kitchen of the house, and that she thought she was driving not more than 50 miles per hour. *Held:* If defendant was not driving in excess of 50 miles per hour and turned off the highway in an instinctive effort to avoid collision with the other car in the sudden emergency created by the switching on of its lights, defendant would not be guilty of careless and reckless driving, and the physical facts and circumstances at the scene do not establish as the sole reasonable hypothesis that she was driving with reckless disregard to the rights and safety of others, and therefore her motion to nonsuit should have been allowed.

APPEAL by defendant from *Parker, J.,* at April Criminal Term, 1954, of WAYNE.

Criminal prosecution upon a warrant issued out of County Court of Wayne upon affidavit charging "that at and in said County on or about the 17th day of October, 1953, Odessa Williams Simmons did unlawfully and willfully operate a motor vehicle on the public highways of Wayne County, N. C., in a careless and reckless manner with a willful and wanton disregard for the rights and safety of others against the form of the statute in such cases . . .," and tried in Superior Court upon appeal thereto, upon original warrant, and not upon a bill of indictment by the grand jury.

Upon the trial in Superior Court the State introduced two witnesses, Lee Wooten and W. L. Morrow. Lee Wooten testified:

"I live in Parkstown, 10 or 11 miles from Goldsboro . . . on the Parkstown-Goldsboro hard surface road, 25 or 30 feet from the road. I . . . lived in a rented house. On the night of the 17th of October, my wife, baby and I were in bed in our house when a car hit our house. I got up and pulled my light cord but there were no lights. The power was off. When she hit the house she bumped the lights off. Just before my house was struck, I heard a noise coming down the road; it sounded like an airplane. It scared me. The car made that noise in its approach up to the time of the collision. The noise sounded like it was on the ground. I couldn't get a light so I took my wife and baby and went to the front door because I was scared to go around the house to see what happened. The back porch of my house and the kitchen were struck by the automobile. That is the back part of the house. I did not see the car until the next morning. It was in the field about as far as from here to the back side of the courtroom (about 60 feet).

"It was a Buick automobile 1950 or 1951 model. I did not know who was driving because the driver did not come out that night. No one came

to my house from the car. . . . I saw no one get out of the car for it was dark. I did not see the lights burning on the car. I did not see the car come down the road and I do not know whether the lights were burning. We . . . did not go back until the next morning. Everything in my kitchen was torn up. The dinette set, oil stove, the wood stove and the refrigerator and what groceries I had were knocked over. All of my dishes were broken. There was nothing in the kitchen that was not torn up.

"I did not know Odessa Williams Simmons and saw her the first time the next day after the collision. Then she wanted a wrecker truck. She talked to my landlord at my house the next morning but I heard nothing that she said. She has said nothing to me since my house was struck.

"I examined the tire tracks of the automobile the next morning outside my house. I followed them from the highway where the car jumped the ditch and I saw the track where it jumped the ditch. The track was traveling from toward Parkstown and it came from the highway direct to my kitchen and cut over in the field."

And W. L. Morrow testified:

"I am a member of the State Highway Patrol and investigated the collision at the home of Wooten. They called me about 6:30 a.m. and I was there a little after 7 a.m. I found that the house is in a slight curve and the house is on the outside of the curve about 45 feet of the roadway. The whole back end of the house was completely torn off and there was a Buick automobile setting in the back of an open field on the back side of this house. I made measurements. The kitchen was on the back of the house behind the front of the house from the road. I measured the skid marks leading from the 1951 Buick found near the house. Leading from the back of the Buick automobile there were three tire tracks that looked like the wheels had been rolling and the right front wheel appeared to have been locked and skidded because there were no tread marks and a furrow of 362 feet from the house up to where the car stopped. The place I found the car up to the house was 362 feet and from the house back up toward the highway was 40 more feet of light skid marks which appears to be where the tires had been skidding. From the house there were skid marks leading to the highway for a distance of 40 feet to a guy wire on a telephone pole that had been broken. The post was between the road and the house at one end of the house, the east end. The guy wire was a one-half inch cable and from the highway skid marks came off the highway about 100 feet up a 3-foot embankment. The measurements were 362 feet from the car to the house, 40 feet from the house to the guy wire and 100 feet from the guy wire to the highway where the skid marks began, a total of 502 feet plus the 12 ft. width of the house, making a total of 514 feet. There were several people out there at the Buick car

when I arrived and in five minutes a wrecker came up with this colored fellow on it, whose name I do not have. The chimney was knocked out and the roof moved to one side.

"Odessa told me that she was driving her car and that the accident or collision occurred about midnight. She appeared somewhat nervous and her eyes were red but I did not detect any odor of alcohol. She made the statement to me that as she approached this cross-roads a parked car on the opposite side of the cross-roads switched on its lights and that she was blinded by these lights and in an effort to avoid striking the car head-on, she turned off the highway and into the dirt driveway or pathway leading to the kitchen of the house. She further stated that she thought she was driving not more than 50 miles an hour and that if she got over that speed the accelerator would hang up. I returned to the scene and examined the car. The front end was pretty badly damaged. I examined the accelerator and found it to be in perfect working order."

Verdict: Defendant is guilty as charged.

Judgment: That defendant be confined in the quarters provided for women and assigned to work under the supervision of the State Highway & Public Works Commission for six months. Execution of sentence suspended upon condition that defendant pay the costs of the court and upon the further condition that she pay $475.00 into the court for the use and benefit of Lee Wooten of any civil liability growing out of the charges of this trial.

Defendant objects and excepts to the foregoing judgment, and in open court gives notice of appeal, and appeals to Supreme Court and assigns error.

*Attorney-General McMullan, Assistant Attorney-General Bruton, and William P. Mayo, Member of Staff, for the State.*

*Matt H. Allen and Paul B. Edmundson for defendant, appellant.*

WINBORNE, J. The sole assignment of error presented on this appeal challenges the ruling of the trial court in denying defendant's motions for judgment as of nonsuit, aptly made, pursuant to the provisions of G.S. 15-173.

When the sufficiency of the evidence offered on the trial in Superior Court is challenged by motion for judgment as of nonsuit under G.S. 15-173, the evidence is to be taken in the light most favorable to the State.

Nevertheless, when the State, as in the case in hand, has introduced in evidence the statement of defendant, the statement is presented as worthy of belief. And when such statement tends to exculpate defendant, he is entitled to whatever advantage it affords, even to an acquittal when it is wholly exculpatory. However, the State by offering the statement of

defendant is not precluded from showing that the facts were different. See *S. v. Fulcher,* 184 N.C. 663, 113 S.E. 769; *S. v. Cohoon,* 206 N.C. 388, 174 S.E. 91; *S. v. Todd,* 222 N.C. 346, 23 S.E. 2d 47; *S. v. Baker,* 222 N.C. 428, 23 S.E. 2d 340; *S. v. Boyd,* 223 N.C. 79, 25 S.E. 2d 456; *S. v. Walls,* 224 N.C. 771, 32 S.E. 2d 348; *S. v. Gordon,* 225 N.C. 757, 36 S.E. 2d 143; *S. v. Phillips,* 227 N.C. 277, 41 S.E. 2d 766; *S. v. Coffey,* 228 N.C. 119, 44 S.E. 2d 886; *S. v. Robinson,* 229 N.C. 647, 50 S.E. 2d 740; *S. v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349; *S. v. Jarrell,* 233 N.C. 741, 65 S.E. 2d 304; *S. v. Tolbert,* 240 N.C. 445, 82 S.E. 2d 201.

In this connection the statement of defendant, made to the State Highway patrolman, considered as worthy of belief, would exculpate the defendant of the single charge against her, that is, that she "did unlawfully and wilfully operate a motor vehicle on the public highways of Wayne County, N. C., in a careless and reckless manner with a wilful and wanton disregard for the rights and safety of others." She thought she was not driving more than 50 miles per hour, that is, within the limit of the law. No one contradicts her. And she argues through her attorney that she was confronted with a sudden emergency, created by the switching on of lights of another automobile. They contend that she followed what this Court said in *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337, and in *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246, is "a human instinct when a collision is impending between two vehicles to turn or cut away from the other vehicle"; and that in those cases the evidence discloses that the turning or cutting away was done in an effort to avoid the collision. To this the Court said that "there is no circumstance tending to show that it was other than what a man of reasonable prudence would have done." If this be so, then a "Wilful and wanton disregard of the rights of others" is absent from her conduct under the circumstances.

But it is contended by the State that there is evidence of circumstances from which it may be reasonably inferred that defendant was driving at an excessive rate of speed, and that the course of her automobile after it left the highway is indicative of "wilful and wanton disregard" with which she was operating it on the highway.

However, in passing upon the legal sufficiency of this evidence, it must be borne in mind that when the State relies upon circumstantial evidence for a conviction of a criminal offense, as in this case, "the rule is that the facts established or advanced on the hearing must be of such nature and so connected or related as to point unerringly to the defendant's guilt and exclude any other reasonable hypothesis." *S. v. Harvey,* 228 N.C. 62, 44 S.E. 2d 472; *S. v. Coffey, supra; S. v. Hendrick, supra,* and cases cited.

While the probative weight of legally sufficient proof is for the jury, the sufficiency of proof in law is for the court. *S. v. Prince,* 182 N.C. 788, 108 S.E. 330.

So, in considering a motion for judgment of nonsuit under G.S. 15-173, the general rule, as stated in *S. v. Johnson,* 199 N.C. 429, 154 S.E. 730, and in numerous other cases before this Court, is that "if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." But where there is merely a suspicion and conjecture in regard to the charge in the bill of indictment against defendant, the motion for judgment of nonsuit will be allowed.

Hence in the light of defendant's statement taken in connection with other evidence of facts and circumstances in respect to the movement of the automobile after it left the highway, this Court is constrained to hold that the evidence leaves the case in conjecture in regard to the charge against defendant,—entitling her to a nonsuit.

Reversed.